| | |
|---|---|
| 1 | Monique M. Fuentes (#205501) |
|   | (mfuentes@rdblaw.com) |
| 2 | ROSS, DIXON & BELL, LLP |
|   | 5 Park Plaza, Suite 1200 |
| 3 | Irvine, California 92614-8529 |
|   | Telephone: (949) 622-2700 |
| 4 | Facsimile: (949) 622-2739 |
| 5 | Richard A. Simpson (*Pro hac vice*) |
|   | (rsimpson@rdblaw.com) |
| 6 | ROSS, DIXON & BELL, LLP |
|   | 2001 K Street, NW |
| 7 | Washington, DC 20006-1040 |
|   | Telephone: (202) 662-2000 |
| 8 | Facsimile: (202) 662-2190 |
| 9 | *Attorneys for Defendant Continental Casualty Company, on behalf of itself and "CNA Insurance Company, Inc.," which is not a legal entity* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE FOCAL POINT, LLC, a California limited liability company; ANDREW SPINGLER; LINDA SPINGLER; G. CHRISTOPHER RITTER; and SCOTT HILTON,<br><br>Plaintiffs,<br><br>v.<br><br>CNA INSURANCE COMPANY, INC.; CONTINENTAL CASUALTY COMPANY,<br><br>Defendants. | No. C07-05764 MHP<br><br>**DEFENDANT CONTINENTAL CASUALTY COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[Declaration of J. Faas and Request for Judicial Notice Filed Concurrently Herewith; [Proposed] Order Lodged Concurrently Herewith]<br><br>Date: April 28, 2008<br>Time: 2:00 p.m.<br>Dept. 15 |

---

858164 v 1

Continental's Motion For Summary Judgment
Case No. C07-05764-MHP

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT, on April 28, 2008, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Continental Casualty Company ("Continental") will and hereby does move for an order granting Continental summary judgment against Plaintiffs The Focal Point, LLC ("Focal Point"), Andrew Spingler, Linda Spingler, G. Christopher Ritter and Scott Hilton.

Continental's seeks summary judgment on the grounds that 1) Continental has no duty to defend the claim asserted by Mr. Ward; and 2) Continental's Policy does not provide coverage for the settlement payment made by Focal Point to Mr. Ward.

Dated: April 4, 2008

Respectfully submitted,

ROSS DIXON & BELL, LLP


By: /s/ Richard A. Simpson
Richard A. Simpson
Monique M. Fuentes

*Attorneys for Defendant Continental Casualty Company, on behalf of itself and "CNA Insurance Company, Inc.," which is not a legal entity*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................1
II. ISSUES PRESENTED ..........................................................................................................3
III. FACTUAL BACKGROUND................................................................................................3
    A. The Continental Policy .............................................................................................3
        1. The D&O Coverage Part...............................................................................4
        2. The Entity Coverage Part..............................................................................5
    B. The Ward Claim.........................................................................................................5
    C. Continental Denies Coverage for the Ward Claim ....................................................7
    D. Continental Reaffirms Its Denial of Coverage Notwithstanding the Individual Insureds' Purported Demand for Indemnification from Focal Point...........................................................................................................................8
    E. Focal Point And The Individual Insureds Enter Into A Settlement With Mr. Ward..........................................................................................................................9
IV. THE 2006 POLICY APPLIES TO THE WARD CLAIM ....................................................9
V. CONTINENTAL IS ENTITLED TO SUMMARY JUDGMENT DETERMINING THAT IT HAS NO DUTY TO PROVIDE DEFENSE OR INDEMNITY COVERAGE FOR THE CLAIM MADE BY MR. WARD ........................................................9
    A. Continental Had No Duty To Provide A Defense for the Ward Claim ..................10
    B. Even If It Had A Duty To Defend The Ward Claim, Continental Has No Obligation To Indemnify Focal Point For The Settlement Payment Made By Focal Point ...............................................................................................................11
        1. Focal Point's Buy-Out of Mr. Ward's Interest in the Company Does Not Constitute Insurable Loss Under the Either D&O Coverage Part or the Entity Coverage Part.......................................................................11
VI. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Pan Pacific Retail Properties, Inc. v. Gulf Insurance Co.,
    471 F.3d 961 (9th Cir. 2006) ..................................................................................14

Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman,
    68 F.3d 347 (9th Cir. 1995) .....................................................................................14

Unified Western Grocers, Inc. v. Twin City Fire Insurance Co.,
    457 F.3d 1106 (9th Cir. 2006) .................................................................................13

## STATE CASES

Bank of the West v. Superior Court,
    2 Cal. 4th 1254 (1992) ..............................................................................12, 13, 14

Certain Underwriters at Lloyd's of London v. Superior Court,
    24 Cal. 4th 945 (2001) ..........................................................................................2, 11

Jaffe v. Cranford Insurance Co.,
    168 Cal. App. 3d 930 (1985) ..............................................................................13, 14

## STATE STATUTES

Cal. Corp. Code § 17153 ...............................................................................................3, 11

Cal. Corp. Code § 17155 ....................................................................................................11

## OTHER

15A Cal. Jur. 3d Corporations § 1025 (2008)................................................................3, 11

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Continental Casualty Company[1] ("Continental") respectfully submits this memorandum in support of its motion for summary judgment. In the interest of brevity, Continental incorporates by reference its Opposition to Plaintiffs' motion for partial summary judgment ("Continental's Opposition"), filed concurrently.

As fully explained in Continental's Opposition, Continental had no duty to provide a defense for this matter. Brian Ward, a member of The Focal Point, LLC ("Focal Point"), asserted a breach of fiduciary duty claim against Plaintiffs Andrew Spingler, Linda Spingler, G. Christopher Ritter and Scott Hilton (collectively, the "Individual Insureds") based on the Individual Insureds' decision to expel Mr. Ward from membership in Focal Point (the "Ward Claim"). The Ward Claim is a classic directors' and officers' liability type of claim; Mr. Ward alleged that the Individual Insureds, acting in their capacity as members of Focal Point, breached their fiduciary duty by voting to expel him from membership. Under the Policy issued by Continental to Focal Point, which combines several different types of coverage within one policy, the Ward Claim falls squarely within the Directors and Officers Liability Coverage Part (the "D&O Coverage Part"). That being said, no coverage is available under the D&O Coverage Part for the Ward Claim because the Insured v. Insured exclusion bars coverage.

Faced with this clear threshold bar to coverage for the only claim Mr. Ward in fact made, Focal Point and the Individual Insureds (collectively, "Plaintiffs") attempt to invent a claim against Focal Point in order to manufacture coverage under the Policy's Entity Liability Coverage Part (the "Entity Coverage Part"). This effort fails for multiple reasons. First, Mr. Ward could not have been more clear that he was making a claim against the Individual Insureds only; he expressly did ***not*** make any claim against Focal Point. Second, as Plaintiffs acknowledge in their

---

[1] On March 4, 2008, Continental filed a stipulation and [proposed] order executed by all parties requesting a dismissal of "CNA Insurance Company" because there is no such legal entity. To date, the Court has not entered an order dismissing CNA. Continental respectfully submits this motion for summary judgment on behalf of itself and, to the extent required, on behalf of "CNA Insurance Company."

motion for partial summary judgment at p. 2:19-20, Mr. Ward based his claim on an alleged breach of fiduciary duty. Because only the other members of Focal Point, and not Focal Point itself, owed any fiduciary duty to Mr. Ward, it is patently unreasonable and illogical to infer, as Plaintiffs do, that Mr. Ward impliedly was asserting a breach of fiduciary duty claim against Focal Point. Third, to the extent that the Individual Insureds made a "claim" against Focal Point to require it to indemnify them with respect to Mr. Ward's claim, that would not mean that Mr. Ward had made a claim against Focal Point. Rather, that would be a breach of contract claim by the Individual Insureds against Focal Point, which would be excluded from coverage by the breach of contract exclusion of the Entity Coverage Part. And, in any event, there was, in reality, no dispute of any kind between Focal Point and the Individual Insureds, who controlled Focal Point. Focal Point had agreed, from the very beginning, to indemnify the Individual Insureds for the Ward Claim. Finally, even if one could somehow infer that Mr. Ward "impliedly" made a claim against Focal Point, notwithstanding his express statement that he was doing no such thing, that implied claim, of necessity, would be for breach of Focal Point's Second Amended and Restated Operating Agreement (the "Operating Agreement"),[2] and so also excluded from coverage by the breach of contract exclusion.

For these reasons, Continental had no duty to provide a defense for the Ward Claim. It therefore follows, a fortiori, that there is no coverage for any settlement of that claim. *See Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001) ("where there is no duty to defend, there *cannot be* a duty to indemnify") (italics in original).

Even if the Court were to find that Continental had a duty to provide a defense for the Ward Claim, however, Continental would, nonetheless, be entitled to summary judgment determining that there is no coverage for the settlement payment made by Focal Point to Mr. Ward. The settlement agreement represents, in substance, a buy-out by Focal Point of Mr. Ward's interest in the company. Under both the D&O Coverage Part and Entity Coverage

---

[2] A copy of the Operating Agreement is attached as Exhibit B to the Declaration of Andrew Spingler in Support of Plaintiffs' Motion for Partial Summary Judgment.

Part, Focal Point's buy-out of Mr. Ward does not constitute insurable **Loss,** as both Coverage Parts provide that "**Loss** shall not include . . . matters which are uninsurable under the law pursuant to which this Policy shall be construed." Under California law, the return of property or funds that do not belong to an insured does not constitute insurable loss. The Individual Insureds purportedly voted to expel Mr. Ward from Focal Point and offered to have Focal Point pay him a certain sum of money as his share of the value of Focal Point. Mr. Ward argued that the offer was far too low under the terms of the Operating Agreement. Simply put, Mr. Ward claimed that the Individual Insureds breached their fiduciary duty by wrongfully causing Focal Point to withhold his fair share interest in Focal Point. The restitution or disgorgement of Mr. Ward's interest in Focal Point, which he alleges was wrongfully retained by the Individual Insureds, is uninsurable, and thus does not constitute **Loss**. As such, the settlement amount that the Individual Insureds caused Focal Point to pay Mr. Ward is not insurable **Loss** under the Policy.[3]

## II. ISSUES PRESENTED

1. Whether Continental had a duty to defend the claim asserted by Mr. Ward.
2. Whether the Policy provides coverage for the settlement payment made by Focal Point to Mr. Ward.

## III. FACTUAL BACKGROUND

### A. The Continental Policy

Continental issued Epack for Private Companies Policy No. 268060719 to Focal Point for the policy period of December 1, 2005 to December 1, 2006 (the "2005 Policy"). Faas Decl., Ex. A. At the expiration of the 2005 Policy, Continental issued a renewal policy for the policy period of December 1, 2006 to December 1, 2008 (the "2006 Policy"). *Id.*, Ex. B. Both policies include

---

[3] The settlement payment could not represent indemnification of the Individual Insureds for Mr. Ward's breach of fiduciary duty claim against them, or it would be an illegal payment. Under California law, a limited liability's operating agreement may provide for the indemnification of managers and members, *except that a manager, such as the Individual Insureds, may **not** be indemnified for breach of fiduciary duty.* See Cal. Corp. Code §§ 17153 and 17155. *See also* 15A Cal. Jur. 3d Corporations § 1025 (2008) (recognizing that manager may not be indemnified for breach of fiduciary duty). Thus, although Focal Point could indemnify the Individual Insureds for the cost of defending against Mr. Ward's breach of fiduciary duty allegations, it could not indemnify them for a settlement or judgment.

several coverage parts, two of which Focal Point alleges are applicable here: the D&O Coverage Part and the Entity Coverage Part. Both policies are written on a "claims made" basis, *i.e.*, the policy in effect when Mr. Ward first made his claim is applicable. Finally, both the D&O Coverage Part and the Entity Coverage Part define the term "**Claim**," in relevant part, to require a "written demand." 2005 and 2006 D&O Coverage Part Section II.1.(a); 2005 and 2006 Entity Coverage Part Section II.1.(a).

As discussed in more detail below, Plaintiffs' motion for partial summary judgment appears to assume that the 2005 Policy applies to Mr. Ward's claim. In fact, however, according to the information provided to Continental, Mr. Ward first made a written demand by way of an email from his counsel sent on December 1, 2006, after the 2006 Policy incepted at 12:01 a.m. that morning. Faas Decl., Ex. C. Accordingly, Continental has handled this matter under the 2006 Policy, and it is clear that that is the applicable policy as the Plaintiffs have provided no written demand made by Mr. Ward prior to December 1, 2006. Thus, all citations herein to the Policy are to the 2006 Policy.[4]

### 1. The D&O Coverage Part

The D&O Coverage Part provides, in part, that:

> [Continental] shall pay all **Loss** resulting from any **Claim** first made against any **Insured Person** during the **Policy Period** . . . for a **Wrongful Act**. Such payment shall be on behalf of such **Insured Person** except and to the extent the **Named Company** or any **Subsidiary** has indemnified them for such **Loss**. Such payment shall be on behalf of the **Named Company** or any **Subsidiary** thereof if such organizations are required, or have determined as permitted by law, to indemnify the **Insured Persons** for such **Loss**.

Faas Decl., Ex. B, D&O Coverage Part Section I.

The D&O Coverage Part provides that Continental "shall not be liable to pay any **Loss** under [the D&O] Coverage Part in connection with any **Claim** made against the **Insured Persons** . . . by or on behalf of any of the other **Insured Persons** in any capacity . . ." (the "Insured v.

---

[4] Nevertheless, all citations herein to the 2006 Policy are identical to the corresponding provisions in the 2005 Policy.

Insured Exclusion"). D&O Coverage Part Section IV.1(g). **Insured Persons** is defined, in part, to mean "all past, present or future duly elected or appointed directors and/or officers of [Focal Point] . . . and managers in the event [Focal Point] . . . is a limited liability company . . . ." D&O Coverage Part Section II.2(a). The D&O Coverage Part also provides that "**Loss** shall not include . . . matters which are uninsurable under the law pursuant to which this Policy shall be construed." D&O Coverage Part Section II.3(v).

### 2. The Entity Coverage Part

The Entity Coverage Part provides, in part, that Continental "shall pay on behalf of [Focal Point] . . . **Loss** resulting from any **Claim** first made during the **Policy Period** . . . against [Focal Point] . . . for a **Wrongful Act**." Faas Decl., Ex. B, Entity Coverage Part Section I. The Entity Coverage Part also provides that Continental "shall not be liable to pay any **Loss** under [the Entity] Coverage Part in connection with any **Claim** made against [Focal Point] . . . for breach of any written or oral contract or agreement . . ." (the "breach of contract exclusion"). Entity Coverage Part Section III.1(l). And, like the D&O Coverage Part, the Entity Coverage Part precludes coverage for matters that are uninsurable, stating, in part, that "**Loss** shall not include . . . matters which are uninsurable under the law pursuant to which this Policy shall be construed." Entity Coverage Part Section II.3(v).

### B. The Ward Claim

In or about November 2006, Mr. Ward, a former General Member and manager of Focal Point, made the first of several oral demands to resolve a dispute he had with the Individual Insureds, who are also General Members and managers of Focal Point. The dispute stemmed from the Individual Insureds' purported attempt to expel Mr. Ward from Focal Point's membership effective December 19, 2006, and to force a purchase of his interest in the company. On December 1, 2006, Mr. Ward's counsel sent an email to Plaintiffs' counsel stating that a

"formal letter" regarding the Individual Insureds' breach of fiduciary duties would be forthcoming, and in the meantime, provided case law for Plaintiffs' counsel's consideration. Faas Decl., Ex. C. On or about January 2, 2007 Continental received notice of Mr. Ward's allegations through an insurance broker. *Id.*, Ex. D.

On January 29, 2007, Mr. Ward's counsel sent a letter to Plaintiffs' counsel setting forth Mr. Ward's bases for alleging that the Individual Insureds had breached their fiduciary duties to him and offering to resolve the dispute if the Individual Insureds would cause Focal Point to buy out Mr. Ward's purported share of the company at a fair price. *See* Declaration of Elliot R. Peters in Support of Plaintiffs' Motion for Partial Summary Judgment, *Submitted Under Seal*, ("Peters Decl.") ¶ 3 and Exhibit A.[5] The second and third paragraphs of the January 29 letter were devoted entirely to making clear that Mr. Ward was only asserting a claim against the Individual Insureds and *not* against Focal Point.[6] *Id.* In fact, Mr. Ward's counsel corrected Plaintiffs' counsel for previously suggesting that Mr. Ward was bringing a claim against Focal Point:

> In [the Insureds' counsel's] December 21, 2006, [counsel] noted that [he was] writing on "behalf of [his] client, The Focal Point, LLC . . ." My client, ***Brian Ward, does not have any claim against or dispute with, [Focal Point] . . . [H]is dispute is solely with the other General Members and not with [Focal Point]***.

*Id.* (emphasis added). Mr. Ward's counsel also informed Plaintiffs' counsel "that use of [Focal Point] funds to pay for legal fees and costs of the other General Members in their personal dispute with Brian Ward would be considered a misuse of [Focal Point] assets and a breach of the fiduciary duty of the control persons in allowing such misuse of funds to occur." *Id.*

---

[5] Continental's copy of this letter is dated January 30, 2007. However, in all material respects, the two letters appear to be identical. For purposes of this motion, Continental relies on the January 29, 2007 letter attached to Mr. Peter's Declaration.

[6] On April 23, 2007, Mr. Ward's counsel restated these same two paragraphs in another demand letter sent to Plaintiffs' counsel. Because the January 29 letter containing the same two paragraphs was filed under seal by Plaintiffs in their own motion for partial summary judgment,

### C. Continental Denies Coverage for the Ward Claim

In a letter dated February 5, 2007, Continental informed Plaintiffs that there was no coverage for the Ward Claim. Faas Decl., Ex. E. Continental explained that, pursuant to Section 6.1 of the Operating Agreement, Mr. Ward *and* the Individual Insureds were managers of Focal Point, and thus **Insured Persons** within the meaning of the Policy. *Id.* As such, coverage was unavailable for the Ward Claim under the D&O Coverage Part because the Insured v. Insured exclusion barred coverage for **Claims** brought by one **Insured Person** (*i.e.*, Mr. Ward) against other **Insured Persons** (*i.e.*, the Individual Insureds). *Id.* Continental explained further that coverage was unavailable under the Entity Coverage Part because, as Mr. Ward's counsel stated repeatedly in his January 29 correspondence, Mr. Ward was only asserting claims against the Individual Insureds and *not* against Focal Point. *Id.*

By letter dated March 20, 2007, Plaintiffs' counsel requested that Continental reconsider its coverage position. *Id.*, Ex. F. Plaintiffs argued that, because Focal Point was obligated to indemnify the Individual Insureds for the defense of Mr. Ward's claim, Mr. Ward was actually making a claim against Focal Point, and thus Continental must reimburse Focal Point for these expenses. *Id.* Continental further analyzed its coverage position, and in a letter dated April 23, 2007, Continental affirmed its denial of coverage. *Id.*, Ex. G. Continental reiterated that, because Mr. Ward clearly had only asserted a **Claim** against the Individual Insureds, and not Focal Point, there could be no coverage for Focal Point under the Entity Coverage Part. *Id.* Continental did agree to treat the Ward Claim as notice of a potential Claim against Focal Point, in case Mr. Ward decided to assert a claim against Focal Point in the future. *Id.*

---

Continental has not attached a copy of the April 23, 2007 letter to its own motion for summary judgment in order to protect the confidentiality asserted by Plaintiffs.

### D. Continental Reaffirms Its Denial of Coverage Notwithstanding the Individual Insureds' Purported Demand for Indemnification from Focal Point

On July 25, 2007, Mr. Spingler provided Continental with a written demand made on Focal Point by the Individual Insureds for indemnification for the Ward Claim pursuant to the Operating Agreement. *Id.*, Ex. H. Mr. Spingler demanded that Continental provide coverage for Focal Point for this so-called "Indemnification Claim." *Id.* Notwithstanding that the letter purported to assert a demand by the Individual Insureds against Focal Point, Mr. Spingler's letter made clear that Focal Point was, in reality, simply seeking coverage for the cost of defending the claims made by Mr. Ward against the Individual Insureds, for which Focal Point already had been indemnifying the Individual Insureds. Put simply, as Focal Point already had agreed to indemnify the Individual Insureds and had, in fact, been doing so, it did not need and was not requesting coverage from Continental in the context of an indemnification dispute between Focal Point and the Individual Insureds. Rather, Plaintiffs simply were attempting to reconfigure the Ward Claim so as to avoid the application of the D&O Part Insured v. Insured exclusion, so that Continental would be required to reimburse Focal Point for the cost of providing indemnification. In other words, Focal Point was trying to manufacture coverage under the Entity Coverage Part for the costs incurred in defending the claim made by Mr. Ward against the Individual Insureds, after it realized coverage would be barred under the D&O Coverage Part. On July 31, 2007, Continental denied coverage for the so-called "Indemnification Claim." *Id.*, Ex. I.

The parties continued to exchange correspondence through August of 2007 regarding Continental's denial of coverage for the Ward Claim. On August 13, 2007, Continental sent its final letter affirming its denial of coverage for the Ward Claim. *Id.*, Ex. J.

### E. Focal Point And The Individual Insureds Enter Into A Settlement With Mr. Ward

Unbeknownst to Continental, on or about October 31, 2007, Focal Point and the Individual Insureds participated in a mediation session that resulted in a settlement with Mr. Ward. *See* Peters Decl., ¶ 4 and Exhibit B. *See also* Faas Decl. ¶ 11. The terms of the settlement, including the amount to be paid to Mr. Ward by Focal Point, are set forth in Focal Point's unredacted version of its Motion and the Peters Declaration.

## IV. THE 2006 POLICY APPLIES TO THE WARD CLAIM

Both the 2005 and the 2006 Policy provide that a **Claim** means, among other things, a "*written demand* for monetary damages or non-monetary relief." 2005 and 2006 D&O Coverage Part Section II.1.(a); 2005 and 2006 Entity Coverage Part Section II.1.(a) (emphasis added).

As noted, Plaintiffs' motion for partial summary judgment appears to assume that the 2005 Policy applies to Mr. Ward's claim. However, according to the information provided to Continental to date, Mr. Ward first made a written demand by way of an email from his counsel sent on December 1, 2006, after the 2006 Policy incepted at 12:01 a.m. that morning. Accordingly, it is clear based on the documents provided to Continental that the 2006 Policy is the applicable Policy. Nevertheless, all citations herein to the 2006 Policy are identical to the corresponding provisions in the 2005 Policy. Thus, regardless of whether the 2005 Policy or the 2006 Policy is applicable, the coverage analysis is the same.

## V. CONTINENTAL IS ENTITLED TO SUMMARY JUDGMENT DETERMINING THAT IT HAS NO DUTY TO PROVIDE DEFENSE OR INDEMNITY COVERAGE FOR THE CLAIM MADE BY MR. WARD

Continental is entitled to summary judgment determining that it had no duty to provide a defense for the Ward Claim, and that therefore there is no coverage for any settlement of that claim. Alternatively, even if Continental is determined to have had a duty to provide a defense, Continental is entitled to summary judgment determining that there is no coverage for the settlement payment made by Focal Point.

A. **Continental Had No Duty To Provide A Defense for the Ward Claim**

As fully explained in Continental's Opposition to Plaintiffs' motion for partial summary judgment, which is incorporated herein by reference, Continental had no duty to provide a defense for the Ward Claim. Mr. Ward made a claim against the Individual Insureds only; he did not make a claim against Focal Point. The Ward Claim is the type of claim that falls under the D&O Coverage Part, regardless of whether the Individual Insureds sought coverage directly for their defense or Focal Point sought coverage for amounts it paid as indemnification of the Individual Insureds for the cost of defending the Ward Claim. The Insured v. Insured exclusion of the D&O Coverage Part bars coverage for the claim made by Mr. Ward.

Moreover, the Entity Coverage Part is not applicable and does not provide coverage with respect to the Ward Claim. Mr. Ward did not make any claim against Focal Point. The Individual Insureds' purported "Indemnification Claim" is, in reality, simply a ruse to distract attention from the fact that Focal Point was, in fact, simply seeking coverage for the cost of defending the Ward Claim made against the Individual Insureds only, and trying to avoid application of the Insured v. Insured exclusion. Focal Point did not incur any defense costs in disputing the Individual Insureds' "claim" for indemnification because there was never any dispute between Focal Point and the Individual Insureds; the dispute was between Mr. Ward and the Individual Insureds. Even if this "Indemnification Claim" was not simply something concocted by Plaintiffs in an attempt to obtain coverage under the Policy, and Focal Point had failed to indemnify the Individual Insureds, the claim would be a contractual claim by the Individual Insureds under the Operating Agreement to require Focal Point to indemnify them with respect to the Ward Claim. This contractual claim would be barred by the breach of contract exclusion of the Entity Coverage Part. Accordingly, there still would be no coverage under the Policy. Finally, even if one could somehow infer that Mr. Ward "impliedly" made a claim against Focal Point, notwithstanding his express statement that he was doing no such thing, and the fact that only the other members of Focal Point, not Focal Point itself, owed a fiduciary duty to Mr. Ward, that "implied claim", of necessity, would be for breach of the Operating Agreement.

As such, any such "implied claim" also would be excluded from coverage by the breach of contract exclusion.

Because Continental had no duty to defend the Ward Claim, it necessarily follows that Continental has no duty to provide coverage for any settlement of that claim. *Certain Underwriters at Lloyd's*, 24 Cal. 4th at 958.

### B. Even If It Had A Duty To Defend The Ward Claim, Continental Has No Obligation To Indemnify Focal Point For The Settlement Payment Made By Focal Point

Even if the Court were to find that Continental had a duty to provide a defense for the Ward Claim, Continental would, nevertheless, be entitled to summary judgment determining that there is no coverage for the settlement amount Focal Point agreed to pay Mr. Ward.

#### 1. Focal Point's Buy-Out of Mr. Ward's Interest in the Company Does Not Constitute Insurable Loss Under the Either D&O Coverage Part or the Entity Coverage Part

The Ward settlement agreement represents, in substance, a buy-out of Mr. Ward's interest in Focal Point.[7] Both the D&O Coverage Part and the Entity Coverage Part provide that "**Loss** shall not include . . . matters which are uninsurable under the law pursuant to which this Policy shall be construed."[8] D&O Coverage Part Section II.3.(v); Entity Coverage Part Section II.3.(v). Focal Point's buy-out of Mr. Ward does not constitute insurable **Loss**.

---

[7] As noted above, although Focal Point could indemnify the Individual Insureds for the cost of defending against Mr. Ward's breach of fiduciary duty claim, California law would not permit Focal Point to indemnify them for a settlement or judgment. *See* Cal. Corp. Code §§ 17153 and 17155. *See also* 15A Cal. Jur. 3d Corporations § 1025 (2008) (recognizing that manager may not be indemnified for breach of fiduciary duty). If the settlement payment in fact represents indemnification of the Individual Insureds, that payment would be illegal and, therefore, uninsurable under California law. Accordingly, the payment would not constitute insurable **Loss** under the Policy.

[8] Plaintiffs primarily have relied on California law in their motion for partial summary judgment, and thus appear to have taken the position that California law is applicable. Moreover, Operating Agreement Section 2.1 states that Focal Point is a California limited liability company and Section 2.3 states that Focal Point's registered office, registered agent and principal office are all in California. Thus, it seems clear that California law applies.

---

858164 v 1     - 11 -     Continental's Motion for Summary Judgment Case No. C07-05764-MHP

The Individual Insureds purportedly voted to expel Mr. Ward from Focal Point and offered to cause Focal Point to pay him a certain sum for his share of the value of Focal Point. *See* Peters Decl., ¶ 3 and Ex. A at p. 2. Mr. Ward argued that the offer was far too low under the terms of the Operating Agreement and demanded payment of his fair share. In other words, Mr. Ward claimed that the Individual Insureds breached their fiduciary duty by voting to expel him and by causing Focal Point to withhold his fair share interest in Focal Point. Under California law, the return of property or funds that do not belong to an insured does not constitute insurable loss. Accordingly, as explained in more detail below, under California law, Focal Point's buy-out of Mr. Ward's interest in the company does not constitute insurable **Loss** under either the D&O Coverage Part or the Entity Coverage Part because Focal Point was not rightfully entitled to keep what belonged to Mr. Ward.

In *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992), the California Supreme Court stated that:

> It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award "damages" as that term is used in insurance policies. (citations omitted).

The rationale behind this principle is simple: if one is ordered to give up what one never had the right to possess in the first place, one has suffered no compensable loss. To permit someone to obtain insurance in such circumstances is contrary to public policy, as it would eliminate any incentive to obey the law and would allow the wrongdoer to retain the fruits of his wrongdoing. Indeed, this is precisely the California Supreme Court's holding in *Bank of the West*:

> The public policy rationale that underlies these holdings, explicitly or implicitly, is this: When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrong-doer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer.

*Id.* at 1269.

California courts have held that, when the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer. *Id.* at 1269. In *Bank of the West*, a class of consumers sued a bank based upon a financing program the bank had developed to finance automobile insurance premiums. *Id.* at 1259. Allegedly, the bank did not disclose the true nature of its financing program to enrollees. *Id.* The bank ultimately settled with the class plaintiffs and sought coverage for the settlement from its insurer, arguing that the settlement amount was for damages arising under the Unfair Business Practices Act, § 17203, and that all forms of monetary relief, including disgorgement orders under § 17203, were damages for insurance purposes. *Id.* at 1265-67. The California Supreme Court rejected the bank's argument and held that "damages" were not available under § 17203, recognizing that "[i]f insurance coverage were available for monetary awards under the Unfair Business Practices Act, a person found to have violated the act would simply shift the loss to his insurer and, in effect, retain the proceeds of his unlawful conduct." *Id.* at 1267.

In its analysis, the Supreme Court discussed an earlier appellate decision, *Jaffe v. Cranford Insurance Co.*, 168 Cal. App. 3d 930 (1985), where the insured was required to return Medi-Cal overpayments it had received from the government and then sought to have his insurer provide coverage for those amounts. *Jaffe* held that the amounts the insured was required to repay were for restitution, and such amounts were uninsurable as a matter of law because "the defendant [was] required to restore to the plaintiff that which was wrongfully acquired." *Id.* at 935. The Court in *Bank of the West* restated the public policy recognized by *Jaffe*, and specifically noted that, had the lower court correctly applied the rule that "*insurable damages do not include costs incurred in disgorging money that has been wrongfully acquired,*" it would have concluded that the settlement amount the bank paid to the consumer class was uninsurable. *Bank of the West*, 2 Cal. 4th at 1268.

The United States Court of Appeals for the Ninth Circuit has applied the holding of *Bank of the West* to bar coverage in other contexts. In *Unified Western Grocers, Inc. v. Twin City Fire Insurance Co.*, 457 F.3d 1106 (9th Cir. 2006), several directors and officers approved a leveraged buyout by a company in which they had an interest, and thus allegedly acquired assets to the

1  detriment of various creditors. The Ninth Circuit, applying California law, followed *Bank of the*
2  *West* and ruled that, to the extent any judgment was for money or property wrongfully received
3  by the defendants, it was uninsurable. *Id.* at 1115-16. The court held that "California case law
4  precludes indemnification and reimbursement of claims that seek the restitution of an ill-gotten
5  gain." *Id.* at 1115. Similarly, in *Pan Pacific Retail Properties, Inc. v. Gulf Insurance Co.*,
6  471 F.3d 961 (9th Cir. 2006), the Ninth Circuit – again citing *Bank of the West* – held that a claim
7  for increased consideration paid to shareholders in a merger "would necessarily seek to divest
8  money that was improperly obtained or withheld"; consequently, "[a]ny payments intended to
9  settle these claims would be uninsurable as seeking to recover the net benefit of the alleged
10 wrongful acts. . . ." *Id.* at 968.

11     The Ninth Circuit has also applied the reasoning of *Bank of the West* to situations where
12 funds were rightfully obtained, but wrongfully *retained*. In *Republic Western Insurance Co. v.*
13 *Spierer, Woodward, Willens, Denis & Furstman*, 68 F.3d 347 (9th Cir. 1995), an attorney was
14 paid a retainer by a corporation for performing legal work. *Id.* at 349. The attorney later was
15 sued by the investors of the corporation, giving rise to a conflict of interest that prevented the
16 attorney from continuing to represent the corporation. At the time the conflict of interest arose, a
17 portion of the retainer was unearned, and the attorney disgorged the unearned retainer. *Id.* The
18 attorney then demanded that his malpractice insurer reimburse him for the disgorged amount. *Id.*
19 at 350.

20     The policy provided that the insurer "agrees to pay . . . all sums . . . which [the attorney]
21 shall become legally obligated to pay as Damages. . . ." *Id.* at 351. The Ninth Circuit held that
22 the return of unearned fees by way of restitution did not constitute "Damages" under the policy.
23 *Id.* The court noted that "restitution" is not limited to money wrongfully acquired, but also
24 included money that may have been rightfully acquired, but wrongfully retained. *Id.* at 351-52.
25 The court noted that restitution was due because the attorney received money in advance for legal
26 services he became unable to perform. Citing to *Jaffe* and *Bank of the West*, the court determined
27 that coverage was not available for the returned funds. *Id.* at 352.

28

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

Here, Mr. Ward alleged that the Individual Insureds breached their fiduciary duty by voting to expel him from Focal Point, and by seeking to deprive him of the fair value of his interest in Focal Point. In substance, Mr. Ward alleged that the Individuals Insureds breached their fiduciary duty by shortchanging him and wrongfully retaining for themselves his interest in Focal Point. On its face, the settlement agreement represents a buy-out of Mr. Ward's interest in Focal Point, *i.e.,* the Individual Insureds caused Focal Point to pay Mr. Ward the value of his membership in order to resolve his claim against them. Under California law, therefore, the restitution or disgorgement of the value of Mr. Ward's interest in Focal Point is uninsurable. Thus, Focal Point's buy-out of Mr. Ward's interest in the company to settle the Ward Claim does not constitute insurable **Loss**.

## VI. CONCLUSION

Continental respectfully requests that the Court grant its motion for summary judgment.

Respectfully submitted,

ROSS DIXON & BELL, LLP

Dated: April 4, 2008

By:  /s/ Richard A. Simpson
Richard A. Simpson
Monique M. Fuentes

*Attorneys for Defendant Continental Casualty Company, on behalf of itself and "CNA Insurance Company, Inc.," which is not a legal entity*