# EXHIBIT B

 *for private companies*                                    *Declarations*

**NOTICE:**

**THIS IS A CLAIMS-MADE POLICY AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES.**

**DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

| NAMED COMPANY AND ADDRESS | PRODUCER |
|---|---|
| Item 1.   Focal Point, LLC, The<br>85 Thundercloud Road<br>Santa Fe, NM 87506<br><br>Attn: | Alexander Morford and Woo<br>Stacy Rivas<br>1100 Larkspur Landing Circle<br>Larkspur, CA 94939 |

| CUSTOMER NUMBER | INSURER |
|---|---|
| 383909 | Continental Casualty Company<br>333 S. Wabash Ave. |

| POLICY NUMBER | |
|---|---|
| 268060719 | **Chicago, IL 60604** |

Item 2.   **Policy Period:** <u>12/1/2006</u> to <u>12/1/2008</u>

         12:01 a.m. local time at the address stated in Item 1.

Item 3.   **Policy Premium:** <u>$15,802</u>

Item 4.   **Notices to Insurer:**

         CNA Pro
         C/O: Claim Intake Manager
         40 Wall Street
         8th Floor
         New York, NY 10005
         Fax: 212-440-3710
         Phone: 212-440-3439

Item 5.   **Limits of Liability and Retentions** (inclusive of **Defense Costs**). Regardless of the Option selected, as indicated by a checked box, please refer to Columns 1 and 4 below for applicable **Coverage Parts** and Prior or Pending Date.

This Policy is issued with the Limits of Liability and Retention Option selected below:

         ☐ Single Limit of Liability and Single Retention:
            Single Limit of Liability:             $
            Single Retention*:                $
         ☒ Single Limit of Liability and Scheduled Retentions:
            Single Limit of Liability:             <u>$2,000,000</u>
            Scheduled Retentions*:       Refer to Column 3 below.
         ☐ Scheduled Limits of Liability and Scheduled Retentions:
            Scheduled Limits of Liability:      Refer to Column 2 below.
            Scheduled Retentions*:         Refer to Column 3 below.



 **Epack** *for private companies*                                    *Declarations*

## COVERAGE SCHEDULE

This Policy includes only those coverages designated with a "Yes" as "Included" in the Coverage Schedule set forth below. If neither "Yes" nor "No" is designated for a Coverage Part or Insuring Agreement, such Coverage Part or Insuring Agreement is not included.

| ① Coverage Part | ② Included (Yes or No) | ③ Scheduled Limits of Liability | ④ Scheduled Retentions* | ⑤ Prior or Pending/ Retroactive Date |
|---|---|---|---|---|
| Employment Practices Liability G-129169-A | Yes | $ | $10,000 | Prior or Pending Date: 12/1/2001 |
| Directors' and Officers' Liability G-129170-A | Yes | $ (Applicable to D&O Liability and Entity Liability combined where purchased.) | $ 0 | Prior or Pending Date: 12/1/2001 |
| Entity Liability(General Coverage) G-132829-A | Yes | | $ 0 | Prior or Pending Date: 12/1/2001 |
| Fiduciary Liability G-129171-A | No | $ | $ | Prior or Pending Date: |
| Miscellaneous Professional Liability G-139035-A | No | $ | $ | Prior or Pending Date: Retroactive Date: N/A |
| Other - please specify | | | | |

*Pursuant to Section **VI** of the General Terms & Conditions, no Retention shall apply to Loss paid on behalf of the Insured Persons if Named Company, any Subsidiary and/or any Plan are not permitted to advance Defense Costs or to indemnify them for **Loss**.

Item 6.   Endorsements forming a part of this Policy at issuance:

        G-133891-A30 New Mexico Policyholder Acknowledgement
        G-139013-A(c) Professional Services Exclusion Endorsement
        G-139017-A Third Party Claims Endorsement
        G-139036-A30 New Mexico Amendatory Endorsement
        G-139042-A30 Policyholder Notification for Rate Modification-New Mexico
        G-144872-A Terrorism (Coverage Endorsement)
        G-144959-A Notice of Insurance Coverage for Acts of Terrorism
        GSL-4482-XX Risk Mitigation Credit Endorsement
        GSL-7075 Consent to Settle - 70%
        PRO-3059-A Entity Liability Coverage Part Exclusions
        PRO-3127-A Priority of Payment Endorsement
        PRO-3131 Named Company Insureds Endorsement
        G-145125-A OFAC Renewal Policyholder Notice
        G-145184-A OFAC Endorsement
        GSL-7133-XX Two Year Policy Period Endorsement

These Declarations, along with the completed and signed **Application**, the Policy, and any written endorsements attached shall constitute the contract between the **Named Company Insureds** and the Insurer.

Authorized Representative: *John B. Brant*

Date: 12/06/2006



 *for private companies*

*Declarations*



 *for private companies*    *General Terms & Conditions*

**THIS IS A CLAIMS-MADE POLICY AND APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

The Insurer and the **Named Company Insureds** agree as follows, in consideration of the payment of the premium and in reliance upon all statements made in the **Application** furnished to the Insurer designated in the Declarations, a stock insurance corporation, hereafter called the "Insurer:"

## I.    TERMS AND CONDITIONS

The terms and conditions of each **Coverage Part** apply only to that **Coverage Part** and shall not apply to any other **Coverage Part**. If any provision in the General Terms & Conditions is inconsistent or in conflict with the terms and conditions of any **Coverage Part**, the terms and conditions of such **Coverage Part** shall control for purposes of that **Coverage Part**.

## II.    DEFINITIONS

For purposes of this Policy, words in bold have the meaning set forth below. However, any bolded word referenced in these General Terms & Conditions but defined in a **Coverage Part** shall, for purposes of coverage under that **Coverage Part**, have the meaning set forth in that **Coverage Part**.

1.  **Application** means all signed applications for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer or any affiliate of the Insurer of which this Policy is a renewal or replacement. **Application** includes any materials submitted or required to be submitted therewith. An "affiliate of the Insurer" means an insurer controlling, controlled by or under common control with the Insurer.

2.  **Coverage Part** means only those coverage parts designated as included in the Declarations.

3.  **Defense Costs** means all fees charged by attorneys designated by the Insurer, or by the **Named Company**, with the Insurer's written consent and all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** if incurred by the Insurer, or by the **Named Company Insureds** with the written consent of the **Insurer**, including the costs of appeal, attachment or similar bonds. The Insurer has no obligation to provide such bonds. **Defense Costs** shall not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and employees of **Named Company** or any **Subsidiary**.

4.  **ERISA or any Similar Act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

5.  **Executive Officer** means:

    a.  with respect to **Named Company** or any **Subsidiary**, its chairperson, chief executive officer, president, chief financial officer and in-house general counsel, and, under the Employment Practices Liability **Coverage Part** (if included) only, the director of human resources or equivalent position; and

    b.  with respect to a **Plan**, its natural person fiduciaries as defined in **ERISA or any Similar Act**.

 *PRO*

**Epack™** *for private companies*    *General Terms & Conditions*

6. **Financial Insolvency** means, with respect to any organization or **Plan** covered under any **Coverage Part** designated as "Included" in the Declarations and attached hereto:

   a. the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such organization or **Plan**; or such organization or **Plan** becoming a debtor in possession; and

   b. the inability of such organization or **Plan** financially or under applicable law to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss.**

7. **Interrelated Wrongful Acts** means any **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

8. **Named Company** means the company named in Item 1 of the Declarations, including such company as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

9. **Named Company Insureds** means all organizations, **Plans** and **Insured Persons** covered under any **Coverage Part.**

10. **Policy Period** means the period from the effective date of this Policy to the Policy expiration date stated in Item 2 of the Declarations, or its earlier cancellation date.

11. **Policy Premium** means the original premium and the fully annualized amount of any additional premiums, other than the Extended Reporting Period premium, charged by the Insurer before or during the **Policy Period.**

12. **Pollutants** means any substance exhibiting hazardous characteristics as, is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state or local or foreign counterpart. **Pollutants** also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

13. **Single Loss** means all **Loss** arising from each **Claim;**

14. **Subsidiary** means any entity in which and so long as more than 50% of the voting stock is owned by **Named Company**, either directly or indirectly:

   a. on or before the effective date of this Policy; or

   b. after the effective date of this Policy by reason of being created or acquired by **Named Company** or any **Subsidiary** after such date, if and to the extent coverage with respect to the entity is afforded pursuant to Section **XIV. 1,**

   including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

15. **Takeover** means:

   a. the acquisition by another entity or person, or group of entities or persons acting in concert, of (i) the ownership or control of voting stock of **Named Company** resulting in the ownership or control of more than 50% of the voting stock of **Named Company** or (ii) assets of **Named Company** resulting in the ownership of more than 50% of the total consolidated assets of **Named Company** as of the date of **Named Company's** most recent audited consolidated financial statement prior to such acquisition;

   b. the merger of **Named Company** into another entity such that **Named Company** is not the surviving entity; or

   c. the consolidation of **Named Company** with another entity.




 **General Terms & Conditions**

*for private companies*

1.   If **Named Company** cancels or non-renews this Policy or if the Insurer decides not to offer any renewal terms for this Policy, the **Named Company** shall have the right to purchase, upon payment of an additional premium equal to 75% of the annualized **Policy Premium,** an extension of this Policy for a period of 12 months immediately following the end of the **Policy Period,** but only with respect to any **Wrongful Act** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover;**

This period shall be referred to as the Extended Reporting Period.

2.   As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this Policy must have been paid. The right to purchase the Extended Reporting Period shall end unless the Insurer receives written notice and full payment of the premium for such period within 30 days after the end of the **Policy Period.**

3.   If the Extended Reporting Period is purchased, the entire premium shall be deemed fully earned at its commencement without any obligation by the Insurer to return any portion thereof.

4.   There is no separate or additional limit of liability for the Extended Reporting Period.

**IV. ESTATES, LEGAL REPRESENTATIVES AND SPOUSES**

The estates, heirs, legal representatives, assigns and spouses of **Insured Persons** shall be considered **Named Company Insureds** under any **Coverage Part**; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns and spouses only for a **Claim** arising solely out of their status as such and, in the case of a spouse, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse. No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign or spouse. All terms and conditions of this Policy, including without limitation the retention, applicable **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such estates, heirs, legal representatives, assigns and spouses.

**V. LIMIT OF LIABILITY/RETENTIONS**

1.   This Policy is offered with one of the following options as set forth in item 5 of the Declarations:

a.   a Single Limit of Liability and Single Retention,

b.   a Single Limit of Liability and Scheduled Retentions, or

c.   the Scheduled Limits of Liability and Scheduled Retentions.

2.   Where the Single Limit of Liability Option and Single Retention Option has been selected:

a.   the limit of liability set forth in Item 5 of the Declarations shall be the maximum aggregate limit of liability of the Insurer for all **Loss** under this Policy, regardless of the number of **Coverage Parts** purchased or **Claims** made against or **Losses** incurred by the **Named Company Insureds.** The Insurer's obligations under this Policy shall be completely fulfilled and extinguished if the limit of liability is exhausted by payment of **Loss;**

b.   the single retention set forth in Item 5 of the Declarations shall apply to each **Single Loss.**





**Epack** *for private companies*     *General Terms & Conditions*

3.  Where the Single Limit of Liability Option and Scheduled Retentions Option has been selected:

    a.  the limit of liability set forth in Item 5 of the Declarations shall be the maximum aggregate limit of liability of the Insurer for all **Loss** under this Policy, regardless of the number of **Coverage Parts** purchased or **Claims** made against or **Losses** incurred by the **Named Company Insureds**. The Insurer's obligations under this Policy shall be completely fulfilled and extinguished if the limit of liability is exhausted by payment of **Loss**;

    b.  Separate Retentions as set forth in Item 5 of the Declarations as the Scheduled Retentions shall apply to each **Single Loss** under each **Coverage Part**.

4.  Where the Scheduled Limits of Liability and Scheduled Retentions Option has been selected:

    a.  the scheduled Limits of Liability set forth in Item 5 of the Declarations as the Scheduled Limits of Liability for each **Coverage Part** shall be separate Limits of Liability for each such **Coverage Part** and shall be the maximum aggregate limit of liability of the Insurer for all **Loss** under the respective **Coverage Part**, regardless of the number of **Claims** made against the **Named Company Insureds**;

    b.  Separate Retentions as set forth in Item 5 of the Declarations as the Scheduled Retentions shall apply to each **Single Loss** under each **Coverage Part**.

5.  If the limit of liability for any **Coverage Part** is exhausted by payment of **Loss**, the Insurer's obligations under such **Coverage Part** shall be deemed completely fulfilled and extinguished.

6.  The Insurer shall pay **Loss** as it becomes due and payable to the **Named Company Insureds**.

7.  Retentions

    a.  Subject to paragraph b. below, the Insurer's obligation to pay **Loss** is in excess of any applicable retentions. The Insurer will have no obligation to pay all or any portion of any applicable retention. Should the Insurer, in its sole discretion, pay any retention, then the **Named Company** shall have the obligation to reimburse the Insurer for such amounts.

    b.  No retention applies with respect to any **Claim** against any **Insured Persons** if the **Named Company**, any **Subsidiary** and/or any **Plan** are not permitted to advance **Defense Costs** or to indemnify such **Insured Persons** for **Loss** by reason of:

        (i)    **Financial Insolvency**; or

        (ii)   a good faith determination by **Named Company**, any **Subsidiary** and/or any **Plan** that such payment is not permitted under the broadest construction of applicable law.

        If **Named Company**, any **Subsidiary** and/or any **Plan** fail to pay the retention applicable to any such **Claim** for any reason other than (i) or (ii) above, then the Insurer on behalf of the **Insured Persons** shall advance **Defense Costs** and pay **Loss** without regard to such retention, but **Named Company**, any **Subsidiary** and/or any **Plan** further agree that they shall reimburse the Insurer for such amounts up to and including the applicable retention.

    c.  Subject to Section **XIII** below, if a **Single Loss** is covered under more than one **Coverage Part** and if more than one retention applies to such **Single Loss**, the maximum total retention amount applicable to such **Single Loss** shall be the highest of such applicable retentions.

**VI.   DEFENSE/SETTLEMENT/ALLOCATION**



 *for private companies*      *General Terms & Conditions*

1. Defense of **Claims**

   The Insurer has the right and duty to defend all **Claims**, even if the allegations are groundless, false or fraudulent. The Insurer shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary. Alternatively the Insurer may, at its option, give its written consent to the defense of any such **Claim** by the **Named Company Insureds**. The Insurer's obligation to defend any **Claim** or pay any **Loss**, including **Defense Costs**, shall be completely fulfilled and extinguished if the limit of liability has been exhausted by payment of **Loss**.

2. Settlement

   a. Consent

   The Insurer shall not settle a **Claim** without the written consent of the **Named Company.** If the **Named Company** refuses to consent to a settlement or compromise recommended by the Insurer, and acceptable to the claimant, then the applicable limit of liability under this Policy shall be reduced to the amount for which the **Claim** could have been settled plus all **Defense Costs** incurred up to the time the Insurer made its recommendation. This reduction in our limit of liability for such **Claim** does not apply to a settlement or compromise proposed by a mediator pursuant to paragraph b. below but rejected by the **Named Company.**

   b. Mediation

   If, prior to institution of arbitration proceedings or service of suit or within 60 days of the institution of such proceedings or service of suit, the Insurer and the **Named Company** agree to use a process of non binding intervention by a neutral third party to resolve any **Claim** reported to the Insurer, and if such **Claim** is resolved through such process, the Insurer will reduce the retention applicable to such **claim** by fifty percent or ten thousand dollars ($10,000.00), whichever is less.

3. Cooperation of **Named Company Insureds**

   The **Named Company Insureds** shall not admit liability, consent to any judgment, agree to any settlement or make any settlement offer without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for any **Loss** to which it has not consented. The **Named Company Insureds** agree that they shall not knowingly take any action which increases the Insurer's exposure for **Loss** under this Policy.

4. Payment of **Loss** in Excess of Retentions

   The Insurer is liable to pay only that amount of a covered **Single Loss** in excess of the applicable retention, if any, up to the applicable limit of liability. The retention shall be uninsured.

**VII.   NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE**

1. If, during the **Policy Period** or any Extended Reporting Period, if applicable, any **Claim** is first made against the **Named Company Insureds** the **Named Company Insureds** shall, as a condition precedent to the obligations of the Insurer under this Policy, give a written notice to the Insurer as soon as practicable but in no event later than ninety days after the **Policy Period** or the Extended Reporting Period, if applicable.

2. If, during the **Policy Period** or the Extended Reporting Period, if applicable, the **Named Company Insureds** first become aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** and during such period give written notice to the Insurer of:

   a. the names of any potential claimants and a description of the **Wrongful Act** which forms the basis of their potential **Claim**,



**Epack** *for private companies*    *General Terms & Conditions*

b.   the identity of the specific **Named Company Insureds** allegedly responsible for such specific **Wrongful Act,**

c.   the consequences which have resulted or may result from such specific **Wrongful Act,**

d.   the nature of the potential monetary damages or non-monetary relief which may be sought in consequence of such specific **Wrongful Act,** and

e.   the circumstances by which **Named Company Insureds** first became aware of such specific **Wrongful Act,**

then any **Claim** otherwise covered pursuant to a **Coverage Part** which is subsequently made and which arises out of such **Wrongful Act** shall be deemed to have been first made and reported to the Insurer by the **Named Company Insureds** at the time such written notice was received by the Insurer. No coverage is provided for fees and expenses incurred prior to the time such notice results in a **Claim.**

3.   Any notice to the Insurer pursuant to subsections 1 or 2 above shall designate the **Coverage Parts** under which the notice is being given and shall be treated as notice under only the **Coverage Parts** so designated.

4.   Except as provided in 2 above, a **Claim** shall be deemed made:

a.   in the case of a civil, criminal, administrative, regulatory or investigative proceeding or arbitration, on the earliest of the date of service upon or other receipt by any **Named Company Insured** of a complaint, indictment, notice of charge or similar document against the **Named Company Insured** in such proceeding or arbitration;

b.   in the case of an investigation, on the earliest of the date of service upon or other receipt by the **Insured Person** of a written notice or subpoena from the investigating authority identifying such **Insured Person** as an individual against whom a formal proceeding may be commenced;

c.   in the case of a written demand for monetary damages or non-monetary relief, on the **Named Company Insureds'** receipt of such written demand.

5.   More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed made on the earlier of:

a.   the date on which the earliest such **Claim** was first made, or

b.   the first date valid notice was given by the **Named Company Insureds** to the Insurer under this Policy of any **Wrongful Act** or under any prior policy of any **Wrongful Act** or any fact, circumstance, situation, event or transaction which underlies any such **Claim.**

6.   The **Named Company Insureds** shall give written notice to the Insurer under this Policy as specified in Item 4 of the Declarations, which shall be effective upon receipt.

7.   The **Named Company Insureds** shall furnish the Insurer with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Insurer may reasonably request.

**VIII.   CANCELLATION**

1.   The Insurer may not cancel this Policy except for non-payment of any premium when due. In such event, the Insurer may cancel this Policy by providing to **Named Company** written notice stating when, not less than 20 days thereafter, such cancellation shall be effective.

2.   The **Named Company Insureds** grant the exclusive authority to cancel this Policy to **Named Company. Named Company** may cancel this Policy by providing the Insurer written notice stating when thereafter such cancellation shall be effective, provided **Named Company** may

 

**Epack™** *for private companies*     *General Terms & Conditions*

not cancel this Policy at any time if the **Policy Period** as set forth in Item 2 of the Declarations is 24 months or longer. The mailing or delivery of such notice shall be sufficient. The unearned premium shall be computed pro rata and premium adjustment may be made at the time cancellation is effected or as soon as practicable.

### IX.    NON-RENEWAL/RENEWAL ON DIFFERENT TERMS

1. Non-Renewal

   If the Insurer decides not to offer any renewal terms for this Policy, the Insurer shall provide written notice to **Named Company** at least 60 days prior to the Policy expiration date. The notice shall include the reason for such non-renewal.

2. Renewal on Different Terms

   If the Insurer offers to renew this Policy on terms which involve any change in retention amounts, premium, limit of liability or other terms and conditions, the Insurer shall provide written notice to **Named Company** at least 60 days prior to the Policy expiration date.

### X.    NOTICES TO NAMED COMPANY

Any notices required under Section **VIII, CANCELLATION,** and Section **IX, NON-RENEWAL/RENEWAL ON DIFFERENT TERMS,** shall be provided to **Named Company** at the last known address and to its insurance agent or broker. The mailing by certified mail of such notice shall be sufficient.

### XI.    OTHER INSURANCE

If any **Loss** resulting from any **Claim** is insured under any other policies, this Policy shall apply only to the extent the **Loss** exceeds the amount paid under such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this Policy.

### XII.    APPLICATION

1. The **Named Company Insureds** represent and acknowledge that the statements contained in the **Application** (which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are true and: (i) are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and (ii) shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.

2. In the event the **Application** contains any misrepresentation or omission:

   a. made with the intent to deceive, or

   b. which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the Policy;



*GTC Page 7 of 10*
G-132823-A (6/00)

 **General Terms & Conditions**
*for private companies*

this Policy shall be voided as to (i) **Named Company**, and **Subsidiary** and any **Plan** if an **Executive Officer** is responsible for or knew of such misrepresentation or omission and, (ii) any **Insured Persons** who are responsible for or who knew of such misrepresentation or omission. Such responsibility or knowledge shall not be imputed to any other **Insured Persons**.

## XIII. COORDINATION AMONG COVERAGE PARTS

Should two or more Coverage Parts apply to the same **Claim**, the Insurer will not pay more than the actual **Loss** incurred by the **Named Company Insureds**.

## XIV. COVERAGE FOR NEW SUBSIDIARIES AND PLANS

1. If, after the effective date of this Policy, (i) **Named Company** or any **Subsidiary** creates or acquires an entity or plan, or (ii) **Named Company**, any **Subsidiary** or any **Plan** merges with another entity or plan such that **Named Company**, any **Subsidiary** or any **Plan** is the surviving entity or plan, then such entity or plan, and any subsidiaries, plans, directors, officers, trustees or employees of such entity or plan who otherwise would thereby become a **Named Company Insured,** shall be covered under this Policy, subject to its terms and conditions, only if:

   a. the fair value of all cash, securities, assumed indebtedness and other consideration paid by **Named Company**, any **Subsidiary** or any **Plan** in such transaction does not exceed 25% of the total consolidated assets of **Named Company** as of the date of **Named Company's** most recent audited consolidated financial statement prior to such transaction; or

   b. other than as described in paragraph a immediately above, the Insurer, at its sole option upon submission of such information as the Insurer may require, and payment of any additional premium and/or amendment of the provisions of the Policy, agrees to provide coverage for such subsidiaries, plans, directors, officers or employees.

2. There shall be no coverage under any **Coverage Part** for any **Wrongful Act** by such created, acquired or merged entity or **Plan**, or by any persons or entities considered to be **Named Company Insureds** pursuant to Section **XIV.**1 above, where such **Wrongful Act** occurred in whole or in part before the effective date of such acquisition or merger or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Acts** occurring before such date, would be considered **Interrelated Wrongful Acts**.

## XV. CHANGE OF STATUS OF INSUREDS

1. **Takeover** of **Named Company**

   In the event of a **Takeover** of **Named Company**, coverage under this Policy shall continue until this Policy is otherwise terminated, but only with respect to **Wrongful Acts** occurring before the effective date of the **Takeover**, unless (i) the Insurer is notified in writing of the **Takeover** prior to the **Takeover** effective date and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and (ii) **Named Company** accepts any special terms, conditions, exclusions or additional premium charge required by the Insurer.

2. Cessation of **Subsidiary**





**Epack** *for private companies*     *General Terms & Conditions*

If any organization ceases to be a **Subsidiary** there shall be no coverage under this Policy for any **Wrongful Act** by such organization or any **Insured Person** or **Plan** of such organization occurring after the date such organization ceased to be a **Subsidiary**.

3.   Transfer of a **Plan**

If the sponsorship of a **Plan** is transferred so that **Named Company** or any **Subsidiary** is no longer the sole employer sponsor of such **Plan**, there shall be no coverage under this Policy for any **Wrongful Act** by or with respect to such **Plan** occurring after the date of such transfer.

## XVI.   SUBROGATION AND RECOVERY

1.   To the extent it pays any **Loss**, the Insurer shall be subrogated to all the **Named Company Insureds'** rights of recovery therefor, including without limitation an **Insured Person's** right to indemnification or advancement from **Named Company** or any **Subsidiary**. The **Named Company Insureds** shall execute all papers necessary to secure such rights, including executing any documents necessary to enable the Insurer effectively to bring suit in their name, and shall take no action which impairs the Insurer's rights of subrogation or recovery.

2.   If a **Single Loss** is in part insured and in part uninsured under this Policy or is in an amount in excess of the applicable limit of liability, the **Named Company Insureds** and the Insurer shall attempt to agree upon an equitable allocation of any recoveries made, whether before or after payment of the **Loss** by the Insurer, from any person or source responsible for causing the **Loss**. Reasonable expenses incurred in making a recovery shall always have priority of payment from all such recoveries. If, after exerting their best efforts, the **Named Company Insureds** and the Insurer are unable to agree upon such an allocation after taking into account due consideration for the respective parties' willingness to pay the expenses of making any recovery, the Insurer, if requested by the **Named Company Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Named Company Insureds**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators.

3.   In no event shall the **Named Company Insureds** be entitled to recoup from recoveries any amount to satisfy any retention until after all amounts which the Insurer is required to pay or pays under any applicable **Coverage Part** are reimbursed to the Insurer.

## XVII.   CHANGES

Notice to or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the provisions of this Policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this Policy.

## XVIII.   COMPANY AUTHORIZATION

The **Named Company Insureds** agree that **Named Company** will act on behalf of the **Named Company Insureds** with respect to giving of all notice to the Insurer (except notices provided in Section **VII.**1 or 2), the receipt of notices from the Insurer, the payment of the premiums, the receipt of any return premiums that may become due under this Policy, and the acceptance of endorsements.



 **Epack**™ *for private companies*     *General Terms & Conditions*

### XIX.    NO ACTION AGAINST INSURER

1.   No action shall be taken against the Insurer unless, as a condition precedent, there shall have been full compliance with all the provisions of this Policy nor until the amount of the **Named Company Insureds'** obligation to pay shall have been finally determined either by final and nonappealable judgment against the **Named Company Insureds** after trial or by written agreement of the **Named Company Insureds**, the claimant and the Insurer.

2.   No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Named Company Insureds** to determine the **Named Company Insureds'** liability, nor shall the Insurer be impleaded by the **Named Company Insureds** or their legal representatives in any such **Claim**.

### XX.    ASSIGNMENT OF INTEREST

Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed to this Policy.

### XXI.    TERRITORY

Coverage shall apply worldwide.

### XXII.    ENTIRE AGREEMENT

The **Named Company Insureds** agree that this Policy, consisting of the Application, the General Terms & Conditions, the Coverage Parts, and all endorsements listed in the Declarations, constitute the entire contract existing between them and the Insurer or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its Chairman and Secretary at Chicago, Illinois, but the same shall not be binding upon the Insurer unless countersigned by a duly authorized representative of the Insurer.



_____
Chairman

_____
Secretary



 **Epack** *for private companies*

*Employment Practices Liability*
*Coverage Part*

## I.    INSURING AGREEMENT

The Insurer shall pay on behalf of **Named Company**, any **Subsidiary** or any **Insured Person Loss** resulting from any **Claim** first made against the **Named Company Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, by or on behalf of a natural person who is an **Employee** or applicant for employment for a **Wrongful Employment Practice.**

## II.    DEFINITIONS

For purposes of coverage under this Coverage Part:

1.  **Claim** means:

    a.   a written demand for monetary damages, or

    b.   a formal civil, administrative, or regulatory proceeding or investigation or an arbitration,

    against any **Named Company Insured**, including any appeal therefrom.

2.  **EEOC Proceeding** means an investigative proceeding before the Equal Employment Opportunity Commission or an adjudicatory or investigative proceeding before any similar federal, state or local government body whose purpose is to address **Wrongful Employment Practices.**

3.  **Employee** means all past, present or future full-time or part-time employees of **Named Company** or any **Subsidiary**, including seasonal and temporary employees and employees leased or loaned to **Named Company Insured** or any **Subsidiary.**

4.  **Insured Persons** means all past, present or future duly elected or appointed directors and/or officers, and all **Employees** of **Named Company** or any **Subsidiary**, and managers in the event the **Named Company** or such **Subsidiary** is a limited liability company.

5.  **Loss** means damages (including back pay and front pay), settlements, judgments (including any award of pre-judgment and post-judgment interest) and **Defense Costs** for which **Named Company**, any **Subsidiary** or any **Insured Person** is legally obligated to pay on account of a covered **Claim**. **Loss** shall not include: (i) criminal or civil fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which there is no legal recourse against **Named Company**, any **Subsidiary** or the **Insured Persons**; (iv) matters which are uninsurable under the law pursuant to which this Policy shall be construed or (v) any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days or sick days. **Loss** shall include punitive, exemplary or multiple damages, if insurable, to the fullest extent permitted by any applicable law. Where the **Named Company Insureds** reasonably determine that punitive, exemplary or multiple damages are insurable under any applicable law, the Insurer shall not challenge that determination of insurability.

6.  **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by **Named Company** or any **Subsidiary.**



 **CNA** *PRO*

 *for private companies*

*Employment Practices Liability*
*Coverage Part*

7. **Wrongful Employment Practice** means any **Wrongful Act** constituting or relating to:

   a. wrongful dismissal or discharge or termination of employment, whether actual or constructive;

   b. employment-related misrepresentation;

   c. violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment, including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866;

   d. sexual harassment or other unlawful harassment in the work place;

   e. wrongful deprivation of career opportunity or failure to employ or promote;

   f. wrongful discipline of employees;

   g. retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;

   h. negligent evaluation of employees;

   i. failure to adopt adequate workplace or employment policies and procedures;

   j. employment-related defamation or invasion of privacy; or

   k. employment-related wrongful infliction of emotional distress.

## III.   EXCLUSIONS

1. <u>Exclusions Applicable to All **Loss**</u>

   The Insurer shall not be liable to pay any **Loss** under this Coverage Part in connection with any **Claim** made against **Named Company**, any **Subsidiary** or **Insured Persons**:

   a. for any actual or alleged bodily injury (other than emotional distress or mental anguish), sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use;

   b. based upon, directly or indirectly arising out of, or in any way involving:

      (1) any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any prior policy, regardless of whether such prior policy affords coverage for such proceeding or arbitration; or

      (2) any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, would constitute **Interrelated Wrongful Acts**;

   c. based upon, directly or indirectly arising out of, in any way involving or constituting any civil, criminal, administrative or regulatory proceeding (including an **EEOC Proceeding**), investigation or arbitration against any of the **Named Company Insureds**:

      (1) pending prior to or on the Prior or Pending Date set forth in the Coverage Schedule of the Declarations; or

      (2) which has been the subject of any notice given under any prior policy, regardless whether such prior policy affords coverage for such proceeding, investigation, or arbitration;

 **PRO**

**Epack** *for private companies*

*Employment Practices Liability*
*Coverage Part*

or any fact, circumstance, situation, transaction or event underlying or alleged in such proceeding, investigation or arbitration; provided however, if such prior proceeding is an **EEOC Proceeding**, this exclusion shall not apply to any **Claim** by **Employees** who did not bring such prior **EEOC Proceeding**;

d.    based upon, directly or indirectly arising out of, or in any way involving: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**; any request, direction or order that any of the **Named Company Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to **Named Company** or any **Subsidiary**, their security holders, or their creditors resulting from any of the aforementioned matters; provided however, this exclusion shall not apply to any **Claim** for retaliatory treatment of the claimant by the **Named Company Insureds** on account of the claimant's actual or threatened disclosure of the matters described in this exclusion;

e.    where it is established in a final adjudication by the judge, jury or arbitrator in such **Claim** that such **Named Company Insured** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled. For purposes of determining the applicability of this exclusion, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** of any **Executive Officer** shall be imputed to **Named Company** and any **Subsidiary**;

f.    where it is established in a final adjudication by the judge, jury or arbitrator in such **Claim** that such **Named Company Insured** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage. For purposes of determining the applicability of this exclusion, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** of any **Executive Officer** shall be imputed to **Named Company** and any **Subsidiary**;

g.    based upon, directly or indirectly arising out of, or in any way involving a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations, or the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto, or any similar federal, state, local or common law;

h.    based upon, directly or indirectly arising out of, or in any way involving any actual or alleged violation of (i) **ERISA or any Similar Act**, (ii) any law governing workers' compensation, unemployment insurance, social security, disability or similar law, (iii) the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), (iv) the Fair Labor Standards Act (except the Equal Pay Act), (v) the National Labor Relations Act, (vi) the Occupational Safety and Health Act of 1970 (OSHA), or (vii) any similar federal, state or local law. However, this exclusion shall not apply to any **Claim** for a **Wrongful Employment Practice** based upon a claimant's exercise of a right pursuant to any such laws; or


**CNA** PRO

*EPL Page 3 of 4*
G-129169-A (6/00)

 *for private companies*

*Employment Practices Liability*
*Coverage Part*

i.   for:

(1)  any **Wrongful Act** by **Insured Persons** of any **Subsidiary,** or by such **Subsidiary,** occurring before the date such entity became a **Subsidiary,** or

(2)  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, would constitute **Interrelated Wrongful Acts**.

2.   Exclusions Applicable to a Portion of Loss

The Insurer shall not be liable under this Coverage Part to pay that portion of **Loss**, other than **Defense Costs**, which constitutes:

a.   the cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement;

b.   the costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of the Americans With Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws;

c.   damages determined to be owing under an express contract with or express severance obligation of **Named Company** or any **Subsidiary**. However, this exclusion shall not apply if and to the extent that liability would have attached to the **Named Company Insureds** in the absence of the express contract with or obligation of **Named Company** or any **Subsidiary**; or

d.   medical or insurance benefits to which the claimant allegedly was entitled or would have been entitled had **Named Company** or any **Subsidiary** provided the claimant with a continuation or conversion of insurance.



 *PRO*

 *for private companies*

*Directors and Officers Liability*
*Coverage Part*

## I.  INSURING AGREEMENT

The Insurer shall pay all **Loss** resulting from any **Claim** first made against any **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act.** Such payment shall be on behalf of such **Insured Person** except and to the extent the **Named Company** or any **Subsidiary** has indemnified them for such **Loss.**  Such payment shall be on behalf of the **Named Company** or any **Subsidiary** thereof if such organizations are required, or have determined as permitted by law, to indemnify the **Insured Persons** for such **Loss.**

## II.  DEFINITIONS

For purposes of coverage under this Coverage Part:

1.  **Claim** means:

    a.  a written demand for monetary damages or non-monetary relief,

    b.  a civil or criminal adjudicatory proceeding or arbitration,

    c.  a formal administrative or regulatory adjudicatory proceeding, or

    d.  a formal civil, criminal, administrative or regulatory investigation,

    against an **Insured Person**, including any appeal therefrom.

2.  **Insured Persons** means:

    a.  all past, present or future duly elected or appointed directors and/or officers of **Named Company** or any **Subsidiary** and managers in the event the **Named Company** or such **Subsidiary** is a limited liability company or, with respect to a **Subsidiary** incorporated outside the United States, their functional equivalent; and

    b.  solely with respect to any **Securities Claim**, any other past, present or future full-time or part-time employees of **Named Company** or any **Subsidiary**, provided such other employees are not included as **Insured Persons** for purposes of Exclusions 1(g) or 1(h) of this Coverage Part.

3.  **Loss** means damages, settlements, judgments (including any award of pre-judgment and post-judgment interest) and **Defense Costs** for which the **Insured Persons** are legally obligated to pay on account of a covered **Claim**. **Loss** shall not include: (i) criminal or civil fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which there is no legal recourse against the **Named Company Insureds**; (iv) punitive or exemplary damages and the amount of any multiplied damage award which is in excess of the damage award so multiplied if such damages result from employment-related **Wrongful Acts**; or (v) matters which are uninsurable under the law pursuant to which this Policy shall be construed. **Loss** shall include punitive, exemplary or multiple damages not described in (iv) above, if insurable, to the fullest extent permitted by any applicable law. Where the **Named Company Insureds** reasonably determine that punitive, exemplary or multiple damages are insurable under any applicable law, the Insurer shall not challenge that determination of insurability.





 *for private companies*

*Directors and Officers Liability*
*Coverage Part*

4.  **Securities** means:

    a.  common or preferred stock or rights, warrants or options in such stock representing an ownership interest in **Named Company** or any **Subsidiary** or a right to acquire or dispose of such interest; or

    b.  notes, bonds or debentures representing a debt owed by **Named Company** or any **Subsidiary** to the extent such instruments would be deemed securities under the federal or state laws of the United States.

5.  **Securities Claim** means a **Claim** which is, in whole or in part (i) based upon or arising out of the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any **Securities** issued by **Named Company** or any **Subsidiary**, or (ii) brought by a **Securities** holder of **Named Company** or any **Subsidiary**, whether it be an individual action, class action, or derivative action on behalf of **Named Company** or any **Subsidiary,** provided such **Claim** is based upon, arises out of, or involves an interest in such **Securities.**

6.  **Wrongful Act** means:

    a.  any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or in an **Outside Position**, or

    b.  any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Position**.

### III.  OUTSIDE POSITIONS COVERAGE

Any coverage for **Claims** against insured officers in an **Outside Position** shall be specifically excess of any indemnification from or insurance provided by the **Not-For-Profit Outside Entity**. No coverage shall be available under this Coverage Part for such **Claim** if the insurer of such other insurance is the Insurer or an affiliate of the Insurer.

For purposes of this coverage:

1.  **Not-For-Profit Outside Entity** means any organization exempt from federal income taxation pursuant to 26 U.S.C. §501(c)(3), as amended.

2.  **Outside Position** means the position of director, officer, trustee, regent or governor held by any duly elected or appointed director or officer of **Named Company** or any **Subsidiary** in any **Not-For-Profit Outside Entity**, provided and so long as such service is part of the director's or officer's regularly assigned duties with **Named Company** or any **Subsidiary** or is at the specific written request or direction of **Named Company** or any **Subsidiary**.

The Insurer shall not be liable to pay any **Loss** under this Section III in connection with any **Claim** made against the **Insured Persons** by, on behalf of, or for the benefit of the **Not-For-Profit Outside Entity** or one or more of the **Not-For-Profit Outside Entity's** directors, officers, trustees, governors or equivalent executives.

### IV.  EXCLUSIONS

1.  Exclusions Applicable to all **Loss**

    The Insurer shall not be liable to pay any **Loss** under this Coverage Part in connection with any **Claim** made against the **Insured Persons**:

    a.  for any actual or alleged bodily injury, sickness, disease, emotional distress, mental anguish or death of any person, or damage to or destruction of any tangible property including loss of use;

    b.  for any actual or alleged violation of **ERISA or any Similar Act** in connection with any employee pension benefit plan, employee welfare benefit plan or excess benefit




 *for private companies*

*Directors and Officers Liability*
*Coverage Part*

plan as defined in 29 U.S.C. §1002, or "employee stock ownership plan" as defined in 26 U.S.C. §4975, of **Named Company**, any **Subsidiary** or any **Outside Entity**;

c.  based upon, directly or indirectly arising out of, or in any way involving:

   (1)  any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any prior policy, in whole or in part; or

   (2)  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, would constitute **Interrelated Wrongful Acts**;

d.  based upon, directly or indirectly arising out of, in any way involving or constituting any civil, criminal, administrative or regulatory proceeding, investigation or arbitration against any of the **Named Company Insureds**:

   (1)  pending prior to or on the Prior or Pending Date set forth in the Coverage Schedule of the Declarations; or

   (2)  which has been the subject of any notice given under any prior policy, regardless whether such prior policy affords coverage for such proceeding, investigation, or arbitration;

   or any fact, circumstance, situation, transaction or event underlying or alleged in such proceeding, investigation or arbitration;

e.  based upon, directly or indirectly arising out of, or in any way involving: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**; any request, direction or order that any of the **Named Company Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to **Named Company**, any **Subsidiary** or any **Outside Entity**, their security holders, or their creditors resulting from any of the aforementioned matters; provided however, this exclusion shall not apply to the extent such **Claim** is (i) subject to indemnification of the **Insured Persons** by the **Named Company** or any **Subsidiary**, (ii) is an individual, class or derivative action, and (iii) is brought by or on behalf of any owner(s) of **Securities** in their capacity as such while acting totally independently of and totally without the solicitation, assistance, participation or intervention of **Named Company**, any **Subsidiary** or any **Insuring Persons**;

f.  for any **Wrongful Act** by the **Insured Persons** in the discharge of their duties in their capacities, or solely by reason of their status, as directors, officers, trustees, regents, governors or employees of any entity other than **Named Company** or any **Subsidiary**, even if directed or requested by **Named Company** or any **Subsidiary** to serve as directors, officers, trustees, regents, governors or employees of such other entity; provided this exclusion shall not apply to service in an **Outside Position**;

g.  by or on behalf of any of the other **Insured Persons** in any capacity, except and to the extent that:

   (1)  such **Claim** is by an officer who is not a director of **Named Company** for any employment-related **Wrongful Act**; or

   (2)  such **Claim** is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Coverage Part;

h.  by, on behalf of, or for the benefit of **Named Company** or any **Subsidiary**, or by any security holder of **Named Company** or any **Subsidiary**, whether it be an individual, class or derivative action, except and to the extent that (i) such **Claim** is brought and maintained solely by persons acting totally independently of and totally without the



 *for private companies*

*Directors and Officers Liability*
*Coverage Part*

solicitation, assistance, participation or intervention of **Named Company**, any **Subsidiary** or any of the **Insured Persons**, or (ii) such **Claim** is brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner or receiver for **Named Company** or any **Subsidiary** or any assignee of such trustee, examiner or receiver;

i.   for:

    (1)  any **Wrongful Act** by **Insured Persons** of any **Subsidiary** occurring before the date such entity became a **Subsidiary**, or

    (2)  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, would constitute **Interrelated Wrongful Acts**;

j.   based upon, directly or indirectly arising out of, or in any way involving:

    (1)  the public offer, sale, offer to sell, solicitation or distribution of securities issued by **Named Company** or any **Subsidiary**; or

    (2)  the actual or alleged violation of any federal, state, local or provincial statute relating to securities or any rules or regulations promulgated thereunder if such violation actually or allegedly occurred after a transaction described in (1), above;

    provided that if, at least 30 days prior to the transaction described in (1), above, the Insurer receives notice of the proposed transaction and any additional information requested by the Insurer, the Insurer shall offer to **Named Company** a proposal to delete this exclusion subject to the terms and conditions, and payment of any additional premium, described in such proposal;

2.   <u>Exclusions Applicable to Non-Indemnified Loss</u>

The Insurer shall not be liable to pay any **Loss** under this Coverage Part in connection with any **Claim** made against the **Insured Persons** for which the **Named Company** or any **Subsidiary** thereof are not required, or have determined that they are not permitted by law, to indemnify the **Insured Persons** for such **Loss**:

a.   where it is established in a final adjudication by the judge, jury or arbitrator in such **Claim** that such **Named Company Insured** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled; or

b.   where it is established in a final adjudication by the judge, jury or arbitrator in such **Claim** that such **Named Company Insured** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage.

For the purpose of determining the applicability of any exclusion set forth in this subsection 2, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**.





 *for private companies*

*Entity Liability*
*Coverage Part*
*(General Coverage)*

## I. INSURING AGREEMENT

The Insurer shall pay on behalf of **Named Company** or any **Subsidiary Loss** resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against **Named Company** or any **Subsidiary** for a **Wrongful Act**.

## II. DEFINITIONS

For purposes of coverage under this Coverage Part:

1.  **Claim** means:

    a.  a written demand for monetary damages or non-monetary relief,

    b.  a civil or criminal adjudicatory proceeding or arbitration, or

    c.  a formal administrative or regulatory adjudicatory proceeding,

    against **Named Company** or any **Subsidiary**, including any appeal therefrom.

2.  **Insured Persons** means all past, present or future duly elected or appointed directors, officers, and **Employees** of **Named Company** or any **Subsidiary**, and managers in the event the **Named Company** or such **Subsidiary** is a limited liability company; or, with respect to a **Subsidiary** incorporated outside the United States, their functional equivalent.

3.  **Loss** means damages, settlements, judgments (including any award of pre-judgment and post-judgment interest) and **Defense Costs** for which **Named Company** or any **Subsidiary** is legally obligated to pay on account of a covered **Claim**. **Loss** shall not include: (i) criminal or civil fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which there is no legal recourse against the **Named Company Insureds**; (iv) punitive or exemplary damages and the amount of any multiplied damage award which is in excess of the damage award so multiplied; or (v) matters which are uninsurable under the law pursuant to which this Policy shall be construed.

4.  **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by **Named Company** or any **Subsidiary**, or by any natural person for whose **Wrongful Act** the **Named Company Insured** is legally responsible.

## III. EXCLUSIONS

1.  <u>Exclusions Applicable to All Loss</u>

    The Insurer shall not be liable to pay any **Loss** under this Coverage Part in connection with any **Claim** made against **Named Company** or any **Subsidiary**:

    a.  based upon, directly or indirectly arising out of, or in any way involving any actual or alleged bodily injury, sickness, disease, emotional distress, mental anguish or death of any person, or damage to or destruction of any tangible property including loss of use;

    b.  for any actual or alleged violation of **ERISA or any Similar Act** in connection with any employee pension benefit plan, employee welfare benefit plan or excess benefit plan as defined in 29 U.S.C. §1002, or employee stock ownership plan as defined in 26 U.S.C. §4975, of **Named Company** or any **Subsidiary**;

 *PRO*

**Epack**™ *for private companies*

*Entity Liability
Coverage Part
(General Coverage)*

c.     based upon, directly or indirectly arising out of, or in any way involving:

    (1)     any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any prior policy; or

    (2)     any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, would constitute **Interrelated Wrongful Acts;**

d.     based upon, directly or indirectly arising out of, in any way involving or constituting any civil, criminal,  administrative or regulatory proceeding, investigation or arbitration against any of the **Named Company Insureds:**

    (1)     pending prior to or on the Prior or Pending Date set forth in the Coverage Schedule of the Declarations; or

    (2)     which has been the subject of any notice given under any prior policy, regardless whether such prior policy affords coverage for such proceeding, investigation, or arbitration;

or any fact, circumstance, situation, transaction or event underlying or alleged in such proceeding, investigation or arbitration;

e.     based upon, directly or indirectly arising out of, or in any way involving: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**; any request, direction or order that any of the **Named Company Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to **Named Company** or any **Subsidiary**, their security holders, or their creditors resulting from any of the aforementioned matters; provided, however, this exclusion shall not apply to the extent such **Claim** (i) is otherwise covered under this Coverage Part; (ii) is an individual, class or derivative action, and (iii) is brought by or on behalf of any owner(s) of **Securities** in their capacity as such,  while acting totally independently of and totally without the solicitation, assistance, participation or intervention of any **Named Company Insured** or **Subsidiary;**

f.     by or on behalf of any past, present or future duly elected or appointed director or officer of **Named Company** or any **Subsidiary** in any capacity, except and to the extent that such **Claim** is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Coverage Part;

g.     by, on behalf of, or for the benefit of **Named Company** or any **Subsidiary**, or by any security holder of **Named Company** or any **Subsidiary**, whether it be an individual, class or derivative action, except and to the extent that (i) such **Claim** is brought and maintained solely by persons acting totally independently of and totally without the solicitation, assistance, participation or intervention of **Named Company**, any **Subsidiary** or any past, present or future duly elected or appointed director or officer of **Named Company** or any **Subsidiary** in any capacity, or (ii) such **Claim** is brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner or receiver for **Named Company** or any **Subsidiary** or any assignee of such trustee, examiner or receiver; or

h.     for:



 *for private companies*

*Entity Liability*
*Coverage Part*
*(General Coverage)*

(1)    any **Wrongful Act** by any employee, or past or present duly elected or appointed director or officer, of any **Subsidiary**, occurring before the date such entity became a **Subsidiary**, or

(2)    any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, would constitute **Interrelated Wrongful Acts;**

i.    where it is established in a final adjudication by a judge, jury or arbitrator in such **Claim** that such **Named Company Insured** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled. For purposes of determining the applicability of this exclusion, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person,** and only the **Wrongful Act** of any **Executive Officer** shall be imputed to **Named Company** and any **Subsidiary;**

j.    where it is established in a final adjudication by a judge, jury or arbitrator in such **Claim** that such **Named Company Insured** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage. For purposes of determining the applicability of this exclusion, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person,** and only the **Wrongful Act** of any **Executive Officer** shall be imputed to **Named Company** and any **Subsidiary;**

k.    based upon, directly or indirectly arising out of, or in any way involving:

(1)    the public offer, sale, solicitation or distribution of securities issued by **Named Company** or any **Subsidiary**; or

(2)    the actual or alleged violation of any federal, state, local or provincial statute relating to securities or any rules or regulations promulgated thereunder if such violation actually or allegedly occurred after a transaction described in (1), above;

provided that if, at least 30 days prior to the transaction described in (1), above, the Insurer receives notice of the proposed transaction and any additional information requested by the Insurer, the Insurer shall offer to **Named Company** a proposal to delete this exclusion subject to the terms and conditions, and payment of any additional premium, described in such proposal;

l.    for breach of any written or oral contract or agreement, provided this exclusion shall not apply to the extent that **Named Company** or such **Subsidiary** would have been liable in the absence of such contract or agreement;

m.    based upon, directly or indirectly arising out of, or in any way involving any employment-related **Wrongful Act**;

n.    to the extent such **Loss** constitutes an amount attributable to the cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement, provided this exclusion shall not apply to **Defense Costs**; or





 *for private companies*

*Entity Liability*
*Coverage Part*
*(General Coverage)*

    o.    based upon, directly or indirectly arising out of, or in any way involving any **Wrongful Act** in connection with the performance of professional services by or on behalf of **Named Company** or any **Subsidiary**, or for the benefit of any other entity or natural person.

2.    Exclusions Applicable to a Portion of **Loss**

The Insurer shall not be liabile under this Coverage Part to pay that portion of **Loss**, other than **Defense Costs**:

    a.    based upon, directly or indirectly arising out of, or in any way involving the actual or proposed payment by **Named Company** or any **Subsidiary** or **Insured Person** of an allegedly inadequate price or consideration for the purchase of securities issued by **Named Company** or any **Subsidiary**; or

    b.    based upon, directly or indirectly arising out of, or in any way involving any dividends or other distributions of corporate profits of **Named Company** or any **Subsidiary** to any shareholder of **Named Company** or any **Subsidiary.**

 

## NEW MEXICO POLICYHOLDER ACKNOWLEDGEMENT

I hereby acknowledge and understand that **Defense Costs** are subject to Retention Amounts and may reduce and completely exhaust the Limits of Liability.  If **Defense Costs** exhaust the Limits of Liability, the Insurer shall have no further obligation for **Defense Costs** or for any judgment or settlement.


_____
Authorized Officer of Named Company


_____
Date

ENDORSEMENT NUMBER: 1
POLICY NUMBER: 268060719
ISSUED TO: Focal Point, LLC, The
EFFECTIVE DATE OF ENDORSEMENT: 12/01/2006

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)



G-133891-A30  (ED. 03/99)



### PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed that this endorsement amends the following Coverage Parts if purchased:

Directors & Officers Liability Coverage Part
Entity Liability Coverage Part (General Coverage)

1.　　　The section captioned, **EXCLUSIONS,** Exclusions Applicable to All **Loss,** is amended by the addition of the following exclusion:

- based upon, directly or indirectly arising out of, or in any way involving any **Wrongful Act** in connection with the performance of professional services by or on behalf of The Focal Point, LLC, for the benefit of any other entity or person; provided, however, this exclusion shall not apply to any **Claim** brought directly or derivatively by an **Independent Security Holder** which alleges the **Named Company Insureds** failed to supervise those who performed such professional services.

2.　　The section captioned **DEFINITIONS** is amended by the addition of the following definition:

- **Independent Security Holder** means any security holder of The Focal Point, LLC, other than any of **Named Company Insured(s)** who is acting totally independently of, and totally without the solicitation, assistance, participation or intervention of, any **Named Company Insured(s).**

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

G139013A (6-00)
Page 1
Continental Casualty Company
Insured Named: Focal Point, LLC, The

Policy No:　268060719
Endorsement No:　2
Effective Date:　12/01/2006

© CNA  All Rights Reserved.



## THIRD PARTY CLAIMS ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed that this endorsement amends the following:

Employment Practices Liability Coverage Part

The section captioned **Insuring Agreement** is deleted in its entirety and replaced with the following:

The Insurer shall pay on behalf of **Named Company**, any **Subsidiary** or any **Insured Person Loss** resulting from any **Claim** first made against the **Named Company Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, by or on behalf of:

a.   a natural person who is an **Employee** or applicant for employment for a **Wrongful Employment Practice**;

b.   any other natural person, but solely for a **Wrongful Employment Practice** as described in paragraph c and d of the definition of **Wrongful Employment Practice**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

G139017A (6-06)
Page 1
Continental Casualty Company
Insured Named: Focal Point, LLC, The

Policy No:   268060719
Endorsement No:   3
Effective Date:   12/01/2006

© CNA  All Rights Reserved.



**NEW MEXICO AMENDATORY ENDORSEMENT**

In consideration of the premium paid, it is agreed that the *General Terms & Conditions* are amended as follows:

I.     Paragraph 4. of Section **III., EXTENDED REPORTING PERIOD,** is deleted in its entirety and replaced with the following:

4.     There will be a one-time reinstatement of the aggregate limit of liability for the Extended Reporting period. The Limit of Liability in the Policy aggregate for the Extended Reporting Period shall be one hundred (100%) of the expiring Policy aggregate.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

G139036A30 (10-05)
Page 1
Continental Casualty Company
Insured Named: Focal Point, LLC, The

Policy No:    268060719
Endorsement No:  4
Effective Date:  12/01/2006

© CNA  All Rights Reserved.



**POLICYHOLDER NOTIFICATION FOR RATE MODIFICATION – NEW MEXICO**

The Insured will be notified in writing of the factors and corresponding amounts which resulted in the rating modification, whether a debit or credit, so that, the Insured will be fairly apprised of any corrective action that might be appropriate with respect to the insurance risk. For subsequent renewal policies, the Insured must also be notified in writing of either the removal of credits or the addition of debits in the rating modification and the reasons therefor.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

G139042A30 (1-01)
Page 1
Continental Casualty Company
Insured Named: Focal Point, LLC, The

Policy No:  268060719
Endorsement No:  5
Effective Date:  12/01/2006

© CNA  All Rights Reserved.



**COVERAGE OF AND CAP ON LOSSES FOR CERTIFIED ACTS OF TERRORISM**

In consideration of the premium charge of $0, it is agreed as follows:

1.   The DEFINITIONS section is amended by the addition of the following new term:

   "**Certified Act of Terrorism**" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

   The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **Certified Act of Terrorism:**

   a.   The act resulted in aggregate losses in excess of $5 million;

   b.   The act is a violent act or an act that is dangerous to human life, property or infrastructure;

   c.   The act resulted in damage within the United States, or outside of the United State in the case of an air carrier or vessel in the premises of a United States mission; and

   d.   The act is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.   This Policy provides coverage for losses arising from **Certified Acts of Terrorism** subject to all other terms and conditions of this policy.

3.   Under the federal Terrorism Risk Insurance Act of 2002, any losses caused by **Certified Acts of Terrorism** will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

4.   With respect to any one or more **Certified Acts of Terrorism**, The Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause in such law which results in a cap on the Insurer's liability for payments for terrorism losses.

All other provisions of the Policy remain unchanged.



# IMPORTANT INFORMATION

### POLICYHOLDER DISCLOSURE

## NOTICE OF INSURANCE COVERAGE

## FOR ACTS OF TERRORISM

You are hereby notified that under, and in accordance with, the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, that you are entitled to insurance coverage for losses arising out of "Certified Acts of Terrorism" subject to all applicable policy provisions.

You should know that under your policy, any covered losses caused by "Certified Acts of Terrorism" will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium as of this date that is attributable to coverage for "Certified Acts of Terrorism" is $0.

As used herein, "Certified Acts of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "Certified Act of Terrorism":

a.     The act resulted in aggregate losses in excess of $5 million; and

b.     The act is a violent act or an act that is dangerous to human life, property or infrastructure;

c.     The act resulted in damage within the United States, or outside of the United States in the case of an air carrier or vessel in the premises of a United States mission.

d.     and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

|  |  |
|---|---|
| Insured Name: | Focal Point, LLC, The |
| Insured Address: | 85 Thundercloud Road<br>Santa Fe, NM 87506 |
| Policy Number: | 268060719 |
| Policy Effective Date: | 12/01/2006 |



G-144959-A  Ed. 3/03
Page 1 of 1



## RISK MITIGATION CREDIT ENDORSEMENT

In consideration of the premium paid for this Policy, the Employment Practices Liability Coverage Part is amended to add the following new Section:

## RISK MITIGATION CREDIT

The Insurer will reduce **Named Company** or any **Subsidiary's** retention for a **Claim** by 50%, up to $25,000, whichever is less, if, within 60 days of our request, the **Named Company** or any **Subsidiary** demonstrates, to our reasonable satisfaction, the existence of the following four (4) conditions:

1.   A copy of the **Named Company** or any **Subsidiary's** written policy on sexual harassment;

2.   A copy of the **Named Company** or any **Subsidiary's** written policy on discrimination;

3.   A copy of the **Named Company** or any **Subsidiary's** written policy on employee grievance or complaint procedure; and

4.   Proof that all directors, officers and managers of the **Named Company** or any **Subsidiary** have attended outside training and education programs on sexual harassment within the last 18 months prior to the filing of a **Claim**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

Policy No:    268060719
Endorsement No:    8
Effective Date:    12/01/2006

© CNA  All Rights Reserved.



### CONSENT TO SETTLE ENDORSEMENT - 70%

In consideration of the premium paid for this Policy, it is agreed that this endorsement amends the following:

General Terms & Conditions

1.    The section captioned **DEFENSE/SETTLEMENT/ALLOCATION**, is amended as follows:

The paragraph captioned Consent is deleted in its entirety and replaced with the following:

- Consent

  The Insurer shall not settle a **Claim** without the written consent of the **Named Company.** If the **Named Company** refuses to consent to a settlement or compromise recommended by the Insurer, and acceptable to the claimant, then the applicable limit of liability under this Policy shall be reduced to the amount for which the **Claim** could have been settled plus all **Defense Costs** incurred up to the time the Insurer made its recommendation, and 70% of any additional **Defense Costs** and covered settlement amounts incurred after the time the Insurer made such recommendations, which amount shall not exceed the remainder of such applicable limit of liability as specified in the Declarations. This reduction in our limit of liability for such **Claim** does not apply to a settlement or compromise proposed by a mediator pursuant to paragraph b. below but rejected by the **Named Company.**

All other provisions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

Policy No:    268060719
Endorsement No:   9
Effective Date:   12/01/2006

© CNA  All Rights Reserved.



**ENTITY LIABILITY COVERAGE PART EXCLUSIONS ENDORSEMENT**

In consideration of the premium paid for this Policy, it is agreed that the *Entity Liability Coverage Part (General Coverage)* is amended as follows:

1.  The section captioned **EXCLUSIONS**, Exclusions Applicable to All **Loss**, is amended by the addition of the following exclusions:

    - based upon, directly or indirectly arising out of, or in any way involving:

        (1)         charges of price fixing, restraint of trade, monopolization or unfair trade; or

        (2)         any actual or alleged violation of:

            (a)     the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade; or

            (b)     any rules or regulations promulgated under or in connection with the above statutes; or

            (c)     any similar provision of any state, federal or local statutory law or common law;

    - for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade dress, trade secret or any other intellectual property rights;

    - for any actual or alleged libel, slander or other form of defamation; or

    - based upon, directly or indirectly arising out of, or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture.

All other provisions of this Policy shall remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

Policy No:      268060719
Endorsement No:   10
Effective Date:   12/01/2006

© CNA  All Rights Reserved.



## PRIORITY OF PAYMENT ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed that the General Terms and Conditions are amended as follows:

The following provision is added to Section **VI. DEFENSE/SETTLEMENT/ALLOCATION:**

5.    Whenever a judgment is rendered on a **Claim** covered by this Policy, or whenever all parties to a **Claim** agree to a settlement, and such judgment or settlement involves **Loss** covered under the Directors and Officers Liability Coverage Part and the Entity Liability Coverage Part, the Insurer shall pay the amount of **Loss** due under the Directors and Officers Liability Coverage Part first up to the remaining Limit of Liability available under the Policy and shall then pay any amount of **Loss** due under the Entity Liability Coverage Part up to the remaining Limit of Liability available under the Policy. Thereafter, any remaining Limit of Liability available under the Policy shall then pay any amount of **Loss** due under any other Coverage Part.

Nothing herein shall be deemed to require the delay or postponement of the payment of any other **Claim** subsequently reported to the Insurer but on which a judgment or settlement occurs prior to the judgment or settlement on an earlier reported **Claim**, regardless of the impact such payment has on the available limits of liability for paying the **Claim** first reported to the Insurer.

Nothing in this endorsement shall be construed to increase the maximum aggregate Limit of Liability of the Insurer for all **Loss** under this Policy, regardless of the number of **Claims** made against the **Named Company Insureds**.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____

(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

PRO3127A (7-04)
Page 1
Continental Casualty Company
Insured Named: Focal Point, LLC, The

Policy No:    268060719
Endorsement No:   11
Effective Date:   12/01/2006

© CNA  All Rights Reserved.



**NAMED COMPANY INSUREDS ENDORSEMENT**

In consideration of the premium paid for this Policy, it is agreed that this endorsement amends the following:

General Terms & Conditions

The section captioned, **DEFINITIONS** is amended as follows:

The definition of **Named Company Insureds,** is deleted in its entirety and replaced with the following:

- Named Company Insureds means the Named Company, any Subsidiary, Plans and Insured Persons covered under any Coverage Part.

All other provisions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

PRO3131 (7-04)
Page 1
Continental Casualty Company
Insured Named: Focal Point, LLC, The

Policy No:  268060719
Endorsement No:  12
Effective Date:  12/01/2006

© CNA All Rights Reserved.



## POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

## ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.    Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.    Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.    Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

ENDORSEMENT NUMBER: 13
POLICY NUMBER: 268060719
ISSUED TO: Focal Point, LLC, The

G-145125-A  (ED. 08/03)
Page 1 of 2



4.      Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.      Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

ENDORSEMENT NUMBER: 13
POLICY NUMBER: 268060719
ISSUED TO: Focal Point, LLC, The
EFFECTIVE DATE OF ENDORSEMENT: 12/01/2006

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CONDITION**

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

ENDORSEMENT NUMBER: 14
POLICY NUMBER: 268060719
ISSUED TO: Focal Point, LLC, The
EFFECTIVE DATE OF ENDORSEMENT: 12/01/2006

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145184-A (Ed. 6/03)
Page 1 of 1



## TWO YEAR POLICY PERIOD ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed that:

The **GENERAL TERMS & CONDITIONS** are amended as follows:

1.     Section **II, DEFINITIONS**, is amended by adding the following:

- **Policy Year** means **First Policy Year**, or **Second Policy Year.**

- **First Policy Year** means the period of time from the effective date of this Policy until the first anniversary\* of such date.

- **Second Policy Year** means the period of time from the first anniversary\* date of this Policy until the end of the **Policy Period.**

        \*     12:01 a.m. Standard Time at the Principal Address stated in Item 1 of the Declarations.

2.     Section **III EXTENDED REPORTING PERIOD** is amended as follows:

Paragraph 1. is deleted and replaced with the following:

1.     If **Named Company** cancels or non-renews this Policy or if the Insurer decides not to offer any renewal terms for this Policy, the **Named Company** shall have the right to purchase, upon payment of an additional premium equal to 37.5% of the total **Policy Premium**, an extension of this Policy for a period of 12 months immediately following the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover**;

This period shall be referred to as the Extended Reporting Period.

Paragraph 4. is amended to add the following:

The Limit of Liability applicable to the **Policy Year** in effect at the end of the **Policy Period** shall also apply to all **Claims** and notices of a **Wrongful Act** reported during the Extended Reporting Period.

3.     Section **V, LIMIT OF LIABILITY/RETENTIONS**, is amended by deleting paragraph 2, 3 and 4 and replacing them with the following:

2.     Where the Single Limit of Liability Option and Single Retention Option has been selected:

a.     the limit of liability set forth in Item 5 of the Declarations shall be the maximum aggregate limit of liability of the Insurer for all **Loss** under this Policy for each **Policy Year**, regardless of the number of **Coverage Parts** purchased or **Claims** made against or **Losses** incurred by the **Named Company Insureds**. The Insurer's obligations under this Policy shall be completely fulfilled and extinguished if the limit of liability is exhausted by payment of **Loss**;

b.     the single retention set forth in Item 5 of the Declarations shall apply to each **Single Loss**.

3.     Where the Single Limit of Liability Option and Scheduled Retentions Option has been selected:

a.     the limit of liability set forth in Item 5 of the Declarations shall be the maximum aggregate limit of liability of the Insurer for all **Loss** under this Policy for each **Policy Year**, regardless of the number of **Coverage Parts** purchased or **Claims** made against or **Losses** incurred by the **Named Company Insureds**. The Insurer's obligations under this Policy shall be completely fulfilled and extinguished if the limit of liability is exhausted by payment of **Loss**;

Policy No:     268060719
Endorsement No:   15
Effective Date:   12/01/2006

. © CNA  All Rights Reserved.



    b.    Separate Retentions as set forth in Item 5 of the Declarations as the Scheduled Retentions shall apply to each **Single Loss** under each **Coverage Part.**

4.    Where the Scheduled Limits of Liability and Scheduled Retentions Option has been selected:

    a.    the scheduled Limits of Liability set forth in Item 5 of the Declarations as the Scheduled Limits of Liability for each **Coverage Part** shall be separate Limits of Liability for each such **Coverage Part** and shall be the maximum aggregate limit of liability of the Insurer for all **Loss** under the respective **Coverage Part** for each **Policy Year**, regardless of the number of **Claims** made against the **Named Company Insureds**;

    b.    Separate Retentions as set forth in Item 5 of the Declarations as the Scheduled Retentions shall apply to each **Single Loss** under each **Coverage Part.**

4.    Section **VIII, CANCELLATION**, is amended by deleting paragraph 2 and replacing it with the following:

    2.    The **Named Company Insureds** grant the exclusive authority to cancel this Policy to **Named Company. Named Company** may cancel this Policy by providing the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing or delivery of such notice shall be sufficient. The unearned premium shall be computed pro rata and premium adjustment may be made at the time cancellation is effected or as soon as practicable.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

Policy No:    268060719
Endorsement No:  15
Effective Date:  12/01/2006

© CNA All Rights Reserved.