UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE FOCAL POINT LLC, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CNA INSURANCE COMPANY, INC. and CONTINENTAL CASUALTY COMPANY<br><br>    Defendants.<br>_____/ | No. C 07-05764 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Cross-Motions for Summary Judgment** |

       On October 11, 2007 The Focal Point, LLC ("Focal Point") along with Andrew Spingler, Linda Spingler, G. Christopher Ritter and Scott Hilton (collectively "Individual Insureds") brought suit against the Continental Casualty Company ("Continental")[1] in the Superior Court for the State of California. Miller Dec., Exh. A. Plaintiffs bring claims of breach of contract, negligence and the breach of the duty of good faith and fair dealing. The action was removed to this court on November 14, 2007. Now before the court are parties' cross-motions for summary judgment.[2] Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

BACKGROUND[3]

I.    The Policies

       Continental issued the "Epack for private companies" insurance policy No. 268060719 to Focal Point for a period from December 1, 2005 to December 1, 2006. Faas Dec., Exh. A (hereinafter "2005 Policy"). Thereafter, Continental renewed this policy for two years, from December 1, 2006 to December 1, 2008. Id., Exh. B (hereinafter "2006 Policy").[4] All policy premiums were timely paid. Spingler Dec., ¶ 6.

1    Focal Point is listed as the "Named Company" under the policy. 2006 Policy, § II.8,
2 Declarations Item 1. The policies contain, *inter alia*, a Directors and Officers ("D&O") coverage
3 part and an Entity coverage part. The policy provides that Continental "has the right and duty to
4 defend all **Claims**, even if the allegations are groundless, false or fraudulent." Id., General Terms
5 and Conditions § VI.1. This provision is applicable to both parts of the policy. Both parts define the
6 term "claim" to require a "written demand." The D&O coverage part requires that demand be made
7 "against an **Insured Person**" and the Entity coverage part requires demand be made "against [Focal
8 Point] or any **Subsidiary**." Id., D&O coverage part § 11.1(a), Entity coverage part § 11.1(a).

10 II.    Factual Background[5]

11    On November 29, 2006 four members of Focal Point—the Individual Insureds—voted to
12 expel Brian Ward ("Ward"), also a Focal Point member, from the membership of the limited liability
13 company ("LLC") Focal Point. Spingler Dec., ¶ 9. Two days later, on December 1, 2006, Ward
14 disputed his expulsion and claimed the members had breached their fiduciary duties and their duty
15 of good faith and fair dealing.[6] Faas Dec., Exh. C; Spingler Dec., Exh. C.[7] Specifically, Ward
16 claimed he was not given his fair share of the value of the company when he was expelled.

17    A month later, Focal Point tendered these allegations to Continental. Faas Dec., Exh. D;
18 Spingler Dec., ¶ 12. On January 23, 2007 Continental requested a more formal demand from Ward,
19 Miller Dec., Exh. C, which was duly provided a few days later, Peters Dec., ¶ 3, Exh. A.[8] One week
20 later, Continental informed plaintiffs that Ward's claim was not covered by the insurance policy
21 because: 1) Ward was an insured person under the policy and the policy did not cover claims
22 asserted by or on behalf of insured persons; and 2) coverage was not available under the Entity
23 coverage part of the policy because Ward's claims were against the Individual Insureds only. Faas
24 Dec., Exh. E; Miller Dec., Exh. D.[9] On March 20, 2007 Plaintiffs contested this decision, arguing
25 that Ward's claims were against both Focal Point and its members, and requested Continental
26 reconsider its position. Faas Dec., Exh. F; Miller Dec., Exh. E. A month later, Continental declined.
27 Faas Dec., Exh. G; Miller Dec. Exh. F. Plaintiffs responded the same day, April 23, 2007,
28 reiterating their arguments. Miller Dec., Exh. G.

2

On July 25, 2007 the Individual Insureds provided Continental with a written demand made on Focal Point by the Individual Insureds. The Individual Insureds were claiming that, pursuant to Focal Point's Operating Agreement, Focal Point was required to indemnify them for expenses incurred in defending Ward's assertions.[10] Faas Dec., Exh. H; Spingler Dec., Exh. H. A week later, Continental reasserted its denial of coverage. Faas Dec., Exh. I; Spingler Dec., Exh. H. On August 1, 2007 plaintiffs again asked Continental to reconsider its position. Miller Dec., Exh. I. On August 13, 2007 Continental sent its final letter reasserting its denial of coverage of Ward's claims. Faas Dec., Exh. J; Miller Dec., Exh. J.

Around October 31, 2007 Focal Point and the Individual Insureds participated in a mediation session with Ward and reached a settlement in principle. Peters Dec., ¶ 4, Exh. B; Miller Dec., Exh. K. A week later, plaintiffs sent the draft settlement agreement to Continental. Miller Dec., Exh. K. Further, plaintiffs represented to Continental that they incurred defense costs in connection with Ward's claims. Spingler Dec., ¶ 11. In February 2008 plaintiffs and Ward settled their dispute, whereby Focal Point agreed to pay a certain amount of money to Ward. Spingler Opp. Dec., Exh. A.

Plaintiffs now seek a judgment awarding them defense costs incurred while defending against Ward's claims and indemnification for the settlement amount they have remitted or will remit to Ward. Defendant seeks a judgment holding that it acted properly when denying coverage of Ward's claims.

LEGAL STANDARD

A. Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

### B. Duty to Defend

There is no argument amongst the parties that California law applies. If an insurer desires to prove it does not have a duty to defend, it must present undisputed facts that eliminate any possibility of coverage. Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993). If the insured sues to enforce the insurer's duty to defend a third-party claim against the insured, actual coverage is not required—the insured need only prove facts showing the claim is potentially covered under the policy. Id. The duty to defend is therefore broader than the duty to indemnify. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966).

The duty to defend arises whenever the third-party suit against the insured seeks damages on any theory that, if proven, would be covered by the insurance policy. Montrose Chem., 6 Cal. 4th at 300. A potential or possibility of coverage triggers the defense duty and it need not be shown that coverage is likely or even reasonably likely. Id. at 299–300. Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. Horace Mann Ins. Co. v. Barberra B., 4 Cal. 4th 1076, 1080 (1993). Finally, in an action in which some claims are potentially covered and others are not, the insurer must mount and fund a defense of the entire action, including those claims for which there is no potential for coverage under the policy. Buss v. Superior Court, 17 Cal. 4th 35, 48 (1997).

4

## DISCUSSION

Plaintiffs and defendant all seek summary judgment on the first and fourth causes of action asserted by plaintiffs. Specifically, they seek summary judgment on the issues of breach of duty to defend and declaratory relief.

There is no argument amongst the parties that procedural requirements under the policy were not met. Further, there is no dispute that all the individual plaintiffs and Ward are "insured persons," that Focal Point is the "named company" in the policy, and that Ward's allegations complained of a "wrongful act" under the policy. Consequently, the parties' dispute boils down to this: Continental claims this is a classic case of an internal dispute amongst the directors and officers of a business whereas plaintiffs claim Ward's allegations were against Focal Point, not the Individual Insureds. Since the policy consists of two parts that could independently provide coverage, the court analyzes each in turn.

### I.  D&O Coverage Part

The insurance policy at issue covers suits brought against individual directors and officers of Focal Point. See generally 2006 Policy, D&O coverage part. The D&O coverage part provides that:

> [Continental] shall pay all **Loss** resulting from any **Claim** first made against any **Insured Person** during the **Policy Period** . . . for a **Wrongful Act**. Such payment shall be on behalf of such **Insured Person** except and to the extent the **Named Company** or any **Subsidiary** has indemnified them for such **Loss**. Such payment shall be on behalf of the **Named Company** or any **Subsidiary** thereof if such organizations are required, or have determined as permitted by law, to indemnify the **Insured Persons** for such **Loss**.

Id., D&O coverage part § I. The policy defines "wrongful act" as:

> a. Any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or in an **Outside Position**, or
> b. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Position**.

Id., D&O coverage part § II.6.

There is no dispute that the individual plaintiffs and Ward are all "insured persons" under this part of the policy.[11] Here, Ward, a former member of the LLC, threatened to bring a claim against the remaining members of the LLC. Whether he was also bringing claims against Focal

5

Point is disputed. The individual members defended this claim and received indemnification from Focal Point for their expenses. The insurance policy provides coverage both for individual members *and* Focal Point with respect to claims made against the Individual Insureds based on wrongful acts. At first blush, then, the policy seems to provide coverage for Ward's claims against the Individual Insureds.

The policy, however, explicitly excludes suits brought by a director or officer insured under the policy. It contains an exclusion whereby Continental:

> shall not be liable to pay any **Loss** under [the D&O] Coverage Part in connection with any **Claim** made against the **Insured Persons** . . . by or on behalf of any of the other **Insured Persons** in any capacity, except and to the extent that . . . such **Claim** is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Coverage Part.

Id., D&O coverage part § IV.1.(g). Thus, if the Individual Insureds are threatened with legal action by Ward, an insured person, the policy does not provide the Individual Insureds with coverage. See Am. Med. Intern., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, 244 F.3d 715, 721–23 (9th Cir. 2001). As discussed below, the same rationale applies to any indemnification provided by Focal Point to the Individual Insureds for the defense of Ward's claims. Specifically, the Individual Insureds cannot claim that Focal Point must indemnify them for the costs of defending against Ward's allegations in order to magically transform Ward's dispute with the Individual Insureds into a claim by the Individual Insureds against Focal Point.

II.     Entity Coverage Part

The Entity coverage part states that Continental "shall pay on behalf of [Focal Point] . . . **Loss** resulting from any **Claim** first made during the **Policy Period** . . . against [Focal Point] . . . for a **Wrongful Act**."[12] Id., Entity coverage part § I. It also contains exclusions that are not pertinent here.[13] Continental argues that no "claim" was made against Focal Point. Plaintiffs dispute this assertion, arguing that two claims were made against Focal Point. First, Ward made a direct claim against Focal Point; and second, the Individual Insureds made a claim for indemnification against Focal Point.

6

A. <u>Ward Claim</u>

Ward expressly did not assert a claim against Focal Point. In correspondence dated January 29, 2007, Ward's attorney stated that Ward "does not have any claim against, or dispute, with [Focal Point]" and that his "dispute is solely with the other General Members and not with [Focal Point]." Peters Dec., Exh. A at 1. The same letter went on to state that "use of [Focal Point] funds to pay for legal fees and costs of the other General Members in their personal dispute with Brian Ward would be considered a misuse of [Focal Point] assets and a breach of the fiduciary duty of the control persons in allowing such misuse of funds to occur." <u>Id.</u> This position was allegedly reiterated in correspondence dated April 23, 2007.[14]

The court now analyzes the facts independently to determine whether Ward's claims were in fact against Focal Point and he claimed otherwise in order to deprive the Individual Insureds from being able to obtain insurance coverage. This is because "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." <u>Barnett v. Fireman's Fund Ins. Co.</u>, 90 Cal. App. 4th 500, 510 (2001). This court's finding—that Ward did not assert a claim against Focal Point—is supported by the nature of Ward's claims. Ward claimed that the Individual Insureds had breached their fiduciary duties to him. Peters Dec., Exh. A at 3. The LLC does not owe fiduciary duties to Ward. Consequently, the LLC could not have been sued for violations of those duties. Plaintiffs urge this court to hold that a duty to defend nevertheless exists because the merits of a claim are not relevant to the determination of an insurance company's duty to defend. <u>See</u> <u>Horace Mann Ins. Co.</u>, 4 Cal. 4th at 1088. While this statement of law is correct, this court refuses to extend it to a situation where a claim—whether meritorious or not—was never actually made against Focal Point.

Plaintiffs claim that the January 29 letter purports to threaten litigation against Focal Point. Specifically, Ward's counsel stated that in the event of a lawsuit, "[Focal Point] will either have to pay the full amount on a judgment . . . or prove that one of its partners provided very sub-standard work for a long time." Peters Dec., Exh. A at 6. This statement, made in passing, does not undercut the express disclaimer of a cause of action against Focal Point. In the context of the underlying

dispute, it would likely be Focal Point that would be responsible for buying out the expelled Ward's share. Based on this fact, plaintiffs claim that since any judgment on Ward's claims—e.g., redistribution of Focal Point's assets—would require action by Focal Point, the company cannot be divorced from Ward's allegations. However, Ward's claims were not made against Focal Point and though Focal Point *could* pay the judgment because the Individual Insureds cause it to do so, the Individual Insureds could also opt to pay the judgment from personal assets. In any event, the fact that Focal Point may eventually pay the judgment due to contractual obligations or because it is caused to do so by the Individual Insureds does not transform Ward's claim against the Individual Insureds into a claim against Focal Point.[15] Consequently, the standard in Montrose Chem., 6 Cal. 4th at 299–300, whereby any doubt as to whether the January 29 letter constituted a demand against Focal Point must be resolved in favor of a duty to defend, is not triggered. The court holds that there was no doubt that Ward was not asserting a demand against Focal Point.[16]

The Individual Insureds claim this tactic was employed by Ward specifically so that they would be individually liable for the defense costs. That may be so; however, it is not the province of this court to fill a gap in insurance coverage exploited by Ward's litigation strategy. Montrose Chem., 6 Cal. 4th at 296, does not require Continental to provide coverage in this scenario—there was no indication here that Ward intended to bring an action against Focal Point.

     B.     <u>Individual Insureds Claim</u>

The Individual Insureds demanded Focal Point indemnify them for the costs of defending against Ward's claims. They argue that this demand—by the Individual Insureds against Focal Point—and subsequent payment by Focal Point constitute a claim against Focal Point, and therefore, covered under the Entity coverage part of the insurance policy. Continental argues there can be no "claim" against Focal Point, if from the outset, Focal Point had agreed to and in fact indemnified the Individual Insureds. In essence, Continental argues that since Focal Point never disputed its obligation to provide indemnification to the Individual Insureds, there could be no "claim" for indemnification. This court agrees. Indeed, a cognizable claim would only exist in the absence of a contractual agreement to indemnify or upon a failure to indemnify in the presence of a contractual

8

agreement. The court notes that in the absence of a contractual agreement to indemnify, this "cognizable claim" would be without merit since Focal Point would then likely have no obligation to indemnify. In any event, even if the Individual Insureds can make a claim against Focal Point for the defense costs, Continental is not liable for an independent reason.

The Entity coverage part of the insurance policy provides coverage for claims made against Focal Point for wrongful acts. If the Individual Insureds could make a claim against Focal Point, their claim would be for a breach of the Operating Agreement, which provides that Focal Point is to indemnify the individual members of the LLC in case of certain events. Specifically, the Operating Agreement—an agreement between the members of the LLC and the LLC itself—states, *inter alia*, that

> [m]embers [of Focal Point] desire to provide for the indemnification of each Member by the Company for any claims which may be asserted against any Member for liability or damages caused by or in connection with (i) any claim arising out of, related to or in connection with services rendered or performed for or on behalf of the Company; or [other company obligations]."

Spingler Dec., Exh. B at Article 8.1(a). The agreement goes on to say that Focal Point "agrees to indemnify, defend and hold harmless each of the Members ("Indemnification") from any and all liabilities, costs, losses, claims, demands, expenses, damages or other charges (including without limitation, costs, expenses and reasonable attorneys' and accountants' fees) arising from or as a result of a Company Obligation." Id. at Article 8.1(b).[17] Consequently, if Focal Point did not indemnify the Individual Insureds, it would be in breach of the Operating Agreement.

The insurance policy at issue here, however, provides an exclusion whereby Continental:

> shall not be liable to pay any **Loss** under [the Entity] Coverage Part in connection with any **Claim** made against [Focal Point] . . . for breach of any written or oral contract or agreement, provided this exclusion shall not apply to the extent that [Focal Point] or such **Subsidiary** would have been liable in the absence of such contract or agreement.

2006 Policy, Entity coverage part § III.1.(1). This exclusion excludes Continental's liability for the claim made by the Individual Insureds. Further, there has been no showing that Focal Point would have been liable for the Individual Insureds' defense costs in the absence of this provision in the Operating Agreement.

9

1       The Individual Insureds are either confused or attempt to have their cake and eat it too. First, they argue that the Operating *Agreement* requires Focal Point to indemnify them for defense costs incurred when defending Ward's allegations. When faced with the above policy exclusion regrading Focal Point's contractual obligations, they claim that Ward's claim is fundamentally a breach of duty claim and therefore the contractual exclusion does not apply. However, the Individual Insureds claim against Focal Point for indemnification is based on the Operating Agreement, not upon Ward's claim against them. Consequently, the contractual exclusion applies to the Individual Insureds claim against Focal Point. Furthermore, whatever breach of contract claims Ward has purportedly brought against Focal Point, if any, would also be subject to this exclusion.

        From a public policy perspective, Ward's claim against the Individual Insureds cannot and should not be transformed into a claim by the Individual Insureds against Focal Point. This would effectively allow for the transformation of every internal director dispute into a claim against the entity that the directors represent. If the court were to hold otherwise, in similar situations—where an expelled member sues the individual members that expelled him for a breach of fiduciary duties—individual members who were sued could always turn around and seek indemnification from the entity, which would, in effect, eviscerate the "insured vs. insured" exception in the D&O coverage part of most insurance policies. Plaintiffs contracted to purchase a policy that provided for an "insured vs. insured" exclusion in the D&O coverage part and they may not, now, after contractual consideration has been exchanged, accomplish by corporate fiat that which is excluded in the policy.

        Furthermore, it is also sound public policy to uphold the exclusion limiting Continental's exposure in the event the entity has contractual obligations. The insurance carrier cannot and should not be held liable for contractual obligations the entity places upon itself. This would allow the entity to place undue burdens upon itself because it would not be the one that would have to satisfy those burdens. It is sound public policy to eliminate perverse incentives of this nature, unless, of course, the insured and insurer bargain for the same.

        Plaintiffs also contend that the Entity coverage part requires Continental to advance defense costs for allegations of a breach of duty by any natural person "for whose **Wrongful Act** [Focal

10

Point] is *legally* responsible." 2006 Policy, Entity coverage part § II.4 (emphasis added). However, though Focal Point may be contractually responsible to defend against allegations of breaches of fiduciary duty committed by its individual members, there is no *legal* responsibility upon Focal Point for the same.[18]

The Individual Insureds claim that the alleged wrongful act of expelling Ward was taken on behalf of Focal Point in accordance with the Operating Agreement, which allows for expulsion of a general member upon the affirmative vote of all other members. Spingler Dec., Exh. B at Article 3.4(d). Therefore, they claim, the Individual Insureds decision to expel was an allegedly wrongful act for which Focal Point is legally responsible. Thus, they claim the relevant question is whether the Individual Insureds were acting on behalf of Focal Point when they expelled Ward or whether they were actually acting as members and therefore allegedly in breach of their fiduciary duties owed to Ward. The answer to this question is irrelevant. If they were acting on behalf of Focal Point, then, as discussed above, Continental is not liable for contractual agreements under which Focal Point has agreed to advance defense costs for the protection of its members. If they were not acting on behalf of Focal Point, the Entity coverage part does not apply. Further, holding Focal Point liable for its members' defense if the members breach their fiduciary duties to other members under the guise of acting on behalf of the company would create a perverse incentive, and consequently, be bad public policy.[19]

Finally, since the court holds that Continental had no duty to defend, it consequently has no duty to indemnify. Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal. 4th 945, 958 (2001) ("where there is no duty to defend, there *cannot* be a duty to indemnify").

CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is DENIED and defendant's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: June 10, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

**ENDNOTES**

1. Pursuant to stipulation amongst the parties, CNA Insurance Company is hereby dismissed from this action. See Docket No. 14.

2. Parties have submitted various documents under seal. All motions for leave to file under seal are GRANTED. Plaintiffs are hereby ORDERED to file redacted versions of all sealed documents, including briefs and declarations, with the court clerk and the Electronic Case Filing system of the Northern District of California.

3. Unless otherwise noted, all facts are taken from the Joint Statement of Undisputed Facts. See Docket No. 20.

4. Since the material provisions of the policies that are relevant to this dispute are identical in both policies, the court will refer to both policies when it references the 2006 Policy.

5. The court hereby takes judicial notice of the case management hearing transcript under Federal Rule of Evidence 201. See Def.'s Request for Judicial Notice, Exh. 1.

6. There seems to be confusion as to which policy applies since the 2005 Policy covered the period from December 1, 2005 to December 1, 2006 and the 2006 Policy was for the period from December 1, 2006 to December 1, 2008. However, since the terms relevant to this motion are identical in both policies, the court uses the 2006 Policy as the operative document.

7. The court does not rely on any statements made by Spingler to which defendant has objected. Consequently, all of defendant's objections in this regard are OVERRULED as moot.

8. There seems to be some confusion as to the date of this correspondence. The subject matter contained within the two copies of this correspondence, however, is identical. Therefore, the court relies upon Exhibit A of the Peters declaration as the operative document.

9. The court has not relied upon any statements made by Miller in his declaration. Consequently, all of defendant's objections in this regard are OVERRULED as moot.

10. There is no argument that Focal Point declined to indemnify the Individual Insureds.

11. The policy defines "inured persons" to include "all past, present or future duly elected or appointed directors and/or officers of [Focal Point] . . . and managers in the event [Focal Point] . . . is a limited liability company . . . ." 2006 Policy, D&O coverage part § 11.2(a).

12. "Wrongful act" is defined as: "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by **Named Company** or any **Subsidiary**, or by any natural person for whose **Wrongful Act** the **Named Company Insured** is legally responsible." 2006 Policy, Entity coverage part § II.4.

13. The Entity coverage part contains an exclusion whereby Continental "shall not be liable to pay any **Loss** under [the Entity] Coverage Part in connection with any **Claim** made against [Focal Point] or any **Subsidiary** . . . by or on behalf of any past, present or future duly elected or appointed director or officer of [Focal Point] or any **Subsidiary** in any capacity . . . ." 2006 Policy, Entity coverage part § III.1.(f). Here, the claims against Focal Point, if any, are made by past or present *members* and/or *managers* of the LLC. Consequently, they are not excluded as they do not constitute claims made by directors or officers of Focal Point.

14. The court was not provided a copy of this correspondence.

12

15.     It is of particular note that Continental eventually acceded to treat the matter as a potential claim by Ward against Focal Point, should Ward decide to assert such a claim going forward. Faas Dec., Exh. G at 2. No such claim was ever asserted.

16.     The settlement agreement amongst the parties regarding the underlying dispute, which requires Focal Point to make payments to Ward, does not change the analysis. Mere payment of a claim by a party does not mean that a cause of action against that party existed in the first instance.

17.     This Operating Agreement was provided to Continental at the time the policy in issue was renewed. Spingler Dec., ¶ 8.

18.     Seemingly, Focal Point can legally indemnify its *members* for breaches of fiduciary duties when they act in a "member" capacity as opposed to in a "manager" capacity. See Cal. Corp. Code § 17155 ("Except for a breach of [fiduciary duties by LLC *managers*], the articles of organization or written operating agreement of a limited liability company may provide for indemnification of any person, including, without limitation, any manager, member, officer, employee, or agent of the limited liability company, against judgments, settlements, penalties, fines, or expenses of any kind incurred as a result of acting in that capacity."). However, there is no legal required that Focal Point do so.

19.     Plaintiffs argue that Continental owed them a duty to defend *merely* because the Individual Insureds fall under the definition of "Insured Persons" in the insurance policy. Although the Individual Insureds are clearly "Insured Persons" under the policy, this argument is without merit because coverage under an insurance policy must be determined by examining the entire policy and allowing plaintiffs' argument would completely ignore the policy exclusions. See Buss, 16 Cal. 4th at 45.